Peter PANNELL, Libelant,

v.

THE S.S. AMERICAN FLYER, her engines, boilers, tackle, etc., and United States Lines Co., Respondent.

United States District Court
S. D. New York.
Dec. 20, 1957.

S. American Flyer at London, England, his auxiliary sailing yacht Larus and a dinghy, one bundle of masts, and one bundle of spars for delivery at New York. The yacht was shipped on deck in accordance with the terms of a bill of lading issued by respondent to libelant. Stamped across the face of the bill was the following notation:

"On Deck at Shipper's Risk."

The yacht rested on a cradle which was delivered to respondent by libelant. Two athwartship 4″ x 4″ shores were placed at each side of the cradle; and the yacht has held in the cradle by means of lashings. The bill listed the gross weight of the shipment as 11 tons.

The S.S. American Flyer arrived at New York, N. Y., on or about May 29, 1953. While the yacht was being unloaded a piece of the ship's tackle broke causing the yacht to fall some 18 inches into the cradle. The amount of damage thus caused to the yacht is in excess of $500. (The libelant seeks judgment in the sum of $7,788.) The respondent concedes that it is liable for the damage which occurred to the yacht but denies that it is liable for the amount of damages claimed and contends that its liability is limited to $500 by the terms of the bill.

Hill, Rivkins, Middleton, Louis & Warburton, New York City, for libelant, David L. Maloof, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for respondent, L. De Grove Potter and Richard H. Sommer, New York City, of counsel.

PALMIERI, District Judge.

On or about May 18, 1953 libelant delivered to the respondent and to the S.

Respondent's tariff on yachts at the time was as follows:

|  | Non-Contract | Contract |
|---|---|---|
| Up to 2 tons weight | 80/-w/m | 65/-w/m |
| Over 2 tons and up to 10 tons weight | 85/-w/m | 70/-w/m |
| Over 10 tons and up to 20 tons weight | 95/-w/m | 80/-w/m |
| Over 20 tons weight as per agreement |  |  |

Freight was originally charged on the basis of 10–20 tons weight at the non-contract rate of 95 sh. per measurement ton, being the dock measurement for the yacht and cradle. Subsequently respondent was informed that the yacht without cradle did not exceed 10 tons and also that the owner was entitled to the contract rate. Therefore, the freight was reassessed giving libelant the benefit of the contract rate and the rate for yachts between two and ten tons weight, namely, 70 sh. per measurement ton, and $383.05 was refunded

to libelant. Both rates were assessed and calculated for an imaginary rectangular space measured· from the bow and the stern of the yacht to the deck of the ship and as wide as the width of the yacht, at 4308 cu. ft., 11 cu. in. A measurement ton is calculated on 40 cu. ft.

The bill contains the following clauses which are pertinent to this action:

"13. The goods may be stowed in poop, forecastle, deckhouse, shelter deck, passenger space, storeroom, bunker space or any other covered-in space and when so stowed shall be deemed for all purposes, including General Average, to be stowed under deck.

"In respect of goods carried on deck, and stated herein to be so carried, all risk of loss or damage by perils inherent in or incident to such carriage shall be borne by the shipper and consignee, but in all other respects the custody and carriage of such goods shall be governed by the terms of this bill of lading and the carrier shall have the benefit of all and the same rights, immunities, exceptions and limitations contained in said Carriage of Goods by Sea Act, notwithstanding Sec. 1 (c) thereof, or the corresponding provision of any similar Act that may be applicable."

"23. In the event of any loss, damage or delay to or in connection with goods exceeding in actual value $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, the value of the goods shall be deemed to be $500 per package or per customary freight unit, as the case may be, and the carrier's liability, if any, shall be determined on the basis of a value of $500 per package or per customary freight unit, unless the nature and a higher value shall be declared by the shipper in writing before shipment and inserted in this bill of lading.

"In the event a higher value is declared by the shipper in writing and inserted in this bill of lading and extra freight paid thereon if required, the carrier's liability, if any, for loss, damage or delay to or in connection with the goods shall be determined on the basis of such declared value and *pro rata* of such declared value in the case of partial loss or damage, provided such declared value does not exceed the actual value of the goods.

"In the event of any loss, damage or delay to or in connection with the goods of a value of $500 or less than $500 per package, lawful money of the United States or in case of goods not shipped in packages, per customary shipping freight unit, the carrier's liability, if any shall be limited to the invoice value of the goods unless otherwise stated herein, on which basis the rate of freight is adjusted. It is not intended that such invoice value shall be an agreed valuation and it is agreed that in no event shall this clause operate to increase the extent of the carrier's liability beyond the market value at port of discharge, if that be less than invoice value.

"It is understood that the meaning of the word 'package' includes pieces and all articles of any description except goods shipped in bulk.

"In no event shall the carrier be liable for more than the loss or damage actually sustained. The carrier shall not be liable for any consequential or special damage and shall have the option of replacing any lost goods and of replacing or repairing any damaged goods."

The facts as above set forth are drawn from a stipulation entered into between the parties. In addition, at the trial, libelant conceded that the yacht was not "goods shipped in bulk." Certain other proofs were adduced at the trial but, with one exception mentioned below, I

do not find that any facts are relevant to my decision other than those set forth above.

The bill shows that the libelant did not enter thereon a declaration of value for the shipment and the freight was accordingly calculated as set forth above. Respondent's tariff, entered in evidence, provided for an additional freight assessment in the case of goods exceeding in value £100 per package, the value of which is declared in writing prior to shipment and inserted in the bill of lading.

Respondent, therefore, while admitting liability for the damage to libelant's yacht, claims that libelant's failure to declare a value for his yacht[1] limits respondent's liability to $500 under clause 23 of the bill, quoted above. This contention is bottomed on a finding that the yacht is a "package" within the meaning of clause 23. Libelant, however, will recover the full measure of the damages he seeks (assuming proof of the *quantum* of damages upon a reference) if the yacht is "goods not shipped in packages." For, in that case, clause 23 of the bill limits respondent's liability to $500 per customary freight unit. The customary freight unit is the "unit upon which the charge for freight is computed." Petition of Isbrandtsen Co., 2 Cir., 1953, 201 F.2d 281, 286. Since the freight charge was computed on a unit of 40 cubic feet and the shipment contained over 100 such units, the limitation of liability will be set, under libelant's theory, at over $50,000, more than enough to allow libelant to recover the damages he here seeks.

The issue in this case, accordingly, is not whether libelant, having secured the cheaper freight rate by not declaring the

value of his yacht, may now be heard to claim that the respondent's liability is not limited. Cf. Pan-Am Trade & Credit Corp. v. The Campfire, 2 Cir., 156 F.2d 603, 605, certiorari denied, 1946, 329 U.S. 774, 67 S.Ct. 194, 91 L.Ed. 666. The issue is simply the measure of respondent's limited liability.

## I

█ The Carriage of Goods by Sea Act, 49 Stat. 1207 (1936), 46 U.S.C.A. §§ 1300–1315, does not regulate the carriage of "cargo which by the contract of carriage is stated as being carried on deck and is so carried." 49 Stat. 1208 (1936), 46 U.S.C. § 1301(c). Accordingly, that Act had no application *ex proprio vigore*, to the instant shipment.

█ Turning to the bill itself, then, we find "on deck" shipments to be regulated by Clause 13. That clause, quoted above, provides, in pertinent part, that the "custody and carriage of such goods shall be governed by the terms of this bill of lading and the carrier shall have the benefit of all and the same * * * limitations contained in said Carriage of Goods by Sea Act, notwithstanding Sec. 1(c) thereof * *." The incorporation of the Carriage of Goods by Sea Act in a bill to cover shipments not otherwise regulated by that Act, is permissible. Waterman S.S. Corp. v. United States Smelting, Refining & Mining Co., 5 Cir., 155 F.2d 687, 691, certiorari denied 1946, 329 U.S. 761, 67 S.Ct. 115, 91 L.Ed. 656; Petition of Isbrandtsen Co., 2 Cir., 1953, 201 F.2d 281, 285. Applying general contract interpretation principles, the particular reference to the Act as containing the measure of respondent's limited liability overrides the general reference to the bill as a whole for determining matters

---

1. The tariff does not specifically provide an *ad valorem* option for the shipment of yachts. Under a general paragraph dealing with "Valuable Goods," however, a declaration of value is provided for, for "goods exceeding £100 per package * * *." The tariff contains no special definition of the word "package." Interpreting the word, therefore, in its ordinary, dictionary sense it is clear that libelant's yacht is not a package. There may be some question, therefore, as to whether libelant was offered the option of declaring the value of his yacht. This issue was not raised by the parties, however, and I will assume that libelant could have declared the value of his yacht.

of "custody and carriage," if the Act and the bill contain different limitations.

The Act contains the following provision regarding limitation of the carrier's liability:

"(5) Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

"By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: *Provided,* That such maximum shall not be less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained." 49 Stat. 1211 (1936), 46 U.S.C.A. § 1304(5).

Since the bill provides that the respondent's limited liability is to be determined under the Act, therefore, the respondent's liability will be limited to $500 only if the yacht is a "package," as that term is used in the Act. The Court of Appeals for this Circuit has indicated that an uncrated locomotive is not a package, Petition of Isbrandtsen Co., 2 Cir., 1953, 201 F.2d 281, 286; and has held that a giant amusement crane, which was shipped in pieces, none of which was boxed or crated, was not a package. Stirnimann v. The San Diego, 2 Cir., 1945, 148 F.2d 141, 143, affirming D.C.S.D.N.Y.1944, 55 F.Supp. 798. And

this Court has held that an uncrated, uncased piece of a rock crusher, shipped knocked down, was not a "package" within the meaning of the Act. Middle East Agency, Inc., v. The John B. Waterman, D.C.S.D.N.Y.1949, 86 F.Supp. 487, 492. See also Waterman S.S. Corp. v. United States Smelting, Refining & Mining Co., 5 Cir., 155 F.2d 687, 693, certiorari denied 1946, 329 U.S. 761, 67 S.Ct. 115, 91 L.Ed. 656 (structural steel carried on deck not a "package").

■■ The purpose of the Act's limitation section is "to prevent 'excessive claims in respect of small packages of great value,' but not to permit carriers to escape liability for just claims. * * " Stirnimann v. The San Diego, supra. See also, The Bill, D.C.D.Md., 55 F.Supp. 780, 782, affirmed per curiam, 4 Cir., 1944, 145 F.2d 470. If this purpose is to be effectuated, the word "package," as used in the Act, is to be interpreted in its dictionary sense: "A bundle or parcel wrapped or made up for * * * transportation." The Act's limitation provision is intended to protect the carrier from the liability which would otherwise be placed upon it for loss to a valuable shipment where, since the nature of the shipment was hidden by its container, the carrier would not be apprised, upon receipt of the package, of the special care which might be required to protect its contents, and the special risks which its carriage might entail. Here, however, the carrier knew exactly what was entrusted to its care, and was put on notice, by receipt of the yacht itself, of what was required to properly handle it. The Larus was not wrapped or made up in any manner, it was simply hoisted upon the S.S. American Flyer and lashed to a cradle on deck.

It has been held that uncrated pieces of machinery, bolted to skids, are "packages" within the meaning of the Act. Middle East Agency, Inc., v. The John B. Waterman, supra.[2] Respondent con-

2. The Court relied on the decision in Whaite v. Lancashire and Yorkshire Ry. Co., L.R. 9 Ex. 467 (1875). In that

case a wagon loaded on a truck was held to be a "package." The carrier's employees could determine that the wagon

tends, therefore, that the placement of the yacht in its cradle made the yacht a "package" within the meaning of the Act.[3]

Aside from the fact that the yacht was not bolted to its cradle, the decisions of the Courts of Appeals do not appear to have been influenced by the manner in which the shipments were made fast. Thus, in the Isbrandtsen case, supra, the locomotives were stowed on rail and timber beds, secured by wire lashings, clips, and turnbuckles. See Petition of United States, D.C.S.D.N.Y.1952, 105 F.Supp. 353, 357, modified and remanded sub nom. Petition of Isbrandtsen Co., 2 Cir., 1953, 201 F.2d 281. In Waterman S. S. Corp. v. United States Smelting, Refining & Mining Co., 5 Cir., 155 F.2d 687, 689–690, 693, certiorari denied 1946, 329 U.S. 761, 67 S.Ct. 115, 91 L.Ed. 656, pieces of structural steel were held not to be packages although the steel was lashed to the deck by galvanized chain. It would seem that the determination of whether an item is a "package" within the meaning of the Act should not turn on the manner in which the cargo is secured.

■ There remain to be mentioned two decisions which hold that uncrated items of cargo entered in a bill of lading in a column headed "Class and Contents of Packages," are to be considered as packages for the purposes of limitation of liability. The Margaret Lykes, D.C. E.D.La.1944, 57 F.Supp. 466, 471, 473; [4] R. H. Eyles v. United Fruit Co., D.C.S. D.N.Y., 1942 A.M.C. 1470 (otherwise unreported). The courts in these cases held that the parties had, because of the

heading on the column, stipulated that the goods were to be considered "packages." Apart from the fact that the yacht here was entered in a column headed "Description of Goods." I agree with the statement of the Court in Middle East Agency, Inc., v. The John B. Waterman, D.C.S.D.N.Y.1949, 86 F.Supp. 487, 491 that "the use of the printed word 'package' on this bill of lading should [not] be construed as a 'stipulation' of the parties that the tractors were packages under the Act. Any attempt by the carrier to modify the limitation provisions of the Carriage of Goods by a Sea Act through a printed provision of a bill of lading should be carefully scrutinized by the courts." I discuss in Part II of this opinion the reasons why I hold that the definition contained in Clause 23 cannot be considered such a stipulation in this case.

■ Accordingly, since the bill provides that the carrier's liability is limited as provided by the Carriage of Goods by Sea Act, I hold that within the meaning of the Act (and, therefore, the bill), the yacht was not a "package," and that the carrier's liability is limited to $500 per customary freight unit.

**II**

Respondent urges, however, that the particular definition of "package," set forth in Clause 23 of the bill overrides the reference of the bill to the Act, and, therefore, overrides the meaning of the term "package" as used in the Act. The difficulty with this argument is that the bill, itself, in Clause 13 particularly refers to the Act as the measure of the

was loaded with paintings, but could not determine their value.

3. It is, perhaps, also significant that the final freight rate was determined by excluding the weight of the cradle from the weight of the shipment, thus bringing the shipment within the 2 to 10 ton category. The area occupied by the cradle was included in the calculation of the measurement tons to which the rate would be applied; but this appears to have been done because the area under the yacht was not available for other

shipments. The Shipping Instructions referred to the shipment as a "cradled sailing yacht." Whatever comfort respondent may receive from this is destroyed, however, by the subsequent actions of the respondent in recomputing the freight charge.

4. The Court further held that whether or not the truck was a "package," it was a "freight unit." Therefore, in either event, the carrier's liability was limited to $500. The Margaret Lykes, D.C.E.D. La.1944, 57 F.Supp. 466, 471, 473.

carrier's limited liability and only generally states that the "custody and carriage" of the goods is regulated by the terms of the bill. Thus, the very canon of construction which respondent urges requires that the measure of the limited liability be determined under the terms of the Act rather than by the particular definition of "package" contained in Clause 23 of the bill.

Assuming, however, that the general statement in Clause 13 that the "carriage and custody" of on deck shipments shall be governed by the terms of the bill, refers us to the bill rather than the Act for the measure of the carrier's limited liability, I turn now to a consideration of the bill as a whole.

Respondent's argument, at this point, proceeds with syllogistic simplicity: (1) Clause 23 provides that all pieces and articles of any description, "except goods shipped in bulk," are packages. (2) Libelant concedes that the yacht is not "goods shipped in bulk." (3) Therefore, the yacht is a package and respondent's liability is limited to $500. The syllogism fails, however, because the premise is false: Clause 23 cannot, as I will demonstrate, mean what it says; nor can any reasonable interpretation of Clause 23 permit respondent to limit its liability to $500.

Clause 23 purports to define the term "packages" for all types of shipments under the bill. The definition is unacceptable, however, for shipments to which the Carriage of Goods by Sea Act ('tween deck shipments, generally) applies. This is so because, as to shipments to which the Act applies, the meaning of the word "package" as used in the Act must apply or shipments other than those which are "packages" under the Act would be carried under a limited liability lower than that which the Act provides. While the Act allows a limitation of liability to be set at a higher maximum than that provided in the Act, it forbids a lesser maximum than that set forth in the Act. 49 Stat. 1211 (1936), 46 U.S.C.A. § 1304(5).

The Act provides that the limitation for goods not shipped in packages shall be $500 per customary freight unit. If, as to shipments covered by the Act, the bill were permitted to provide that shipments which the Act considers not to be in packages were to be considered as in packages, and liability, therefore, limited to $500 for the shipment, the carrier's liability would be limited (wherever there is more than one freight unit in the shipment) to a maximum smaller than that permitted by the Act. To allow the definition to stand for shipments covered by the Act, therefore, would mean that the carrier could do, in two sentences, what he could not do in one. Cf. Bisso v. Inland Waterways Corp., 1955, 349 U.S. 85, 94–95, 75 S.Ct. 629, 99 L.Ed. 911.

The bill's definition of the term "package," therefore, to the extent that it does not recognize that some cargo not shipped in bulk is also not a package, e. g., locomotives, cranes, structural steel, is void when the shipment involved is one covered by the Act. Indeed, the bill, itself, provides that "[i]f any term of this bill of lading be repugnant to [the Carriage of Goods by Sea Act] to any extent, such term shall be void to that extent but no further." Clause 2.

The question, then, is the extent to which the definition of "package" in Clause 23 is void. As to this, there are at least three possibilities: (1) That the definition is totally void; (2) That the definition is void only to the extent that it does not recognize a category of cargo which is not shipped in bulk but which is also not to be considered a package; or (3) That the definition is void to the extent set forth in (2) but only when the shipment is governed by the Carriage of Goods by Sea Act; i. e., only for 'tween deck shipments.

█ If either possibility (1) or (2) is accepted, respondent cannot prevail. Respondent's liability in this case will be limited to $500 only if it is possible to read the definition of "package" as set forth in Clause 23 as follows: "It is

understood that the meaning of the word 'package' includes pieces and all articles of any description except goods shipped in bulk, except that this definition is void in respect to goods the shipment of which is regulated by the Carriage of Goods by Sea Act to the extent that it does not recognize a class of cargo which is neither shipped in bulk nor in packages." [5] I would be loath, in any event, to construct so elaborate a definition from what is, on its face, so simple a provision. Such provisions in a bill of lading, furthermore, "inserted by the shipowner for his own benefit, are unquestionably to be construed most strongly against him." Compania de Navigacion La Flecha v. Brauer, 1897, 168 U.S. 104, 118, 18 S.Ct. 12, 15, 42 L.Ed. 398.

■ To summarize, the definition of the term "package," as used in the bill to include all shipments not in bulk, cannot mean what it purports to mean, for it conflicts with the Act. To construe it in a manner which will permit the respondent here to succeed is to erect a definition which is not present in the fair intendment of the words used in the bill. Accordingly, I hold that the definition is, at the least, to be construed to adopt, for the purposes of all shipments covered by the bill, the meaning of the word "package" as used in the Carriage of Goods by Sea Act. Accordingly, as shown in Part I of this opinion, the carrier's liability is here limited to $500 per customary freight unit.

## III

Although I believe that my conclusion is correct on the basis of the reasoning set forth above, independently of what is to follow, I wish to advert briefly to two other considerations which point to the same conclusion as that arrived at in the above two portions of the opinion.

1. The question in this case may be posed in the following manner, somewhat differently from the way I have stated it above: When a bill of lading contains a provision subjecting a shipment not otherwise governed by the Carriage of Goods by Sea Act, to that Act, and contains a further provision in conflict with the Act, which provision prevails?

■ The Act, itself, provides that it may be incorporated in the terms of a bill evidencing a coastwise shipment which would otherwise be outside the Act's coverage. 49 Stat. 1212 (1936), 46 U.S.C.A. § 1312. The statute further provides that when the Act is so adopted the shipment "shall be subjected [thereto] as fully as if subject [thereto] by the express provisions of" the Act. Id. When so adopted, the terms of the Act override any inconsistent provision of the bill. Cities Service Oil Co. v. United States, 2 Cir., 1953, 203 F.2d 716; Burdines, Inc., v. Pan-Atlantic Steamship Corp., 5 Cir., 1952, 199 F.2d 571. Although the Act itself does not so provide, the courts have held that the Act may also be incorporated for shipments between two foreign ports (to which it does not otherwise apply), Petition of Isbrandtsen Co., 2 Cir., 1953, 201 F.2d 281, 285; and to on deck shipments (to which it would not otherwise apply), Waterman S.S. Corp. v. United States Smelting, Refining & Mining Co., 5 Cir., 155 F.2d 687, 691, certiorari denied 1946, 329 U.S. 761, 67 S.Ct. 115, 91 L.Ed. 656. I do not believe that the effect of the incorporation should differ according to whether the incorporation is by permission of the Act itself or by permission of the courts. Cf. The Vale Royal, D.C.D. Md.1943, 51 F.Supp. 412, 424 (Harter Act, 27 Stat. 445 (1893), 46 U.S.C.A. §§ 190–196 [which did not by its terms allow its incorporation in bills of lading not otherwise subject to it]; held that provisions of Act prevail over inconsistent provisions in the bill). Accordingly, I further hold that, as a matter of law, since the bill incorporated the Act, the meaning of the word "package" as used

5. It is possible that a less cumbersome definition could be erected which would be consonant with the Act. Any simpler definition, however, would, contrary to clause 2, void Clause 23 to a greater extent than required by the Act.

in the Act overrides the inconsistent definition set forth in the bill.

2. The word "package" is used throughout the bill in its ordinary dictionary sense. Thus, in print much larger than that of Clause 23, and at the very head of the bill, the following is found: "Received from the shipper herein named, the goods or packages said to contain goods herein mentioned * * *" Clause 1 contains the following: "except when inconsistent with the context hereof * * * the word 'goods' shall include the packages said to contain goods * * *; the word 'package' shall include any piece or shipping unit; * * *." Clause 17 refers to "goods out of or separated from their containers or package * * *." Clause 19 authorizes the carrier to "open packages to examine contents," and further requires that "[f]ull freight shall be paid * * * if packages be empty or partly empty * * *."

■■■ I am aware, of course, "that the same words have not necessarily the same meaning attached to them when found in different parts of the same instrument; their meaning is controlled by the context." The Cherokee Nation v. The State of Georgia, 1831, 5 Pet. 1, 19, 8 L.Ed. 25. But the peculiarity of the definition sought to be imposed by Clause 23, coupled with the normal use of the term throughout other portions of the bill and the intricate and contradictory structure of the bill, which appears to take away in one clause what it has granted in another—these factors lend additional weight to the conclusion that Clause 23 should not be considered as turning the yacht Larus into a package. Compania de Navigacion La Flecha v. Brauer, 1897, 168 U.S. 104, 18 S.Ct. 12, 42 L.Ed. 398.

It also appears that Clause 23 is internally inconsistent. The term "packages" is used in it in its ordinary, dictionary sense. It refers to "goods not shipped in packages." It then defines the term "package" as "pieces and all articles of any description except goods shipped in bulk." Substituting the definition for the term in the phrase "goods not shipped in packages," we arrive at "goods not shipped in pieces and all articles of any description except goods shipped in bulk." Whatever this may mean, it is clear that the yacht is such "goods" and that it was not shipped "in" such a piece or article. Indeed, the yacht was not shipped "in" anything, but on a cradle.

## IV

Accordingly, on the basis of the reasoning set forth in the first three portions of this opinion, I hold that respondent's liability for the damages to libelant's yacht is limited to $500 per customary freight unit. The freight unit in this case is 40 cubic feet. Petition of Isbrandtsen Co., 2 Cir., 1953, 201 F.2d 281, 286. There being sufficient freight units in this shipment to allow libelant recovery for the full amount he claims, and the respondent having conceded liability, although it denies the *quantum* of damages, libelant is entitled to an interlocutory decree in its favor referring the issue of damages to a commissioner.

This opinion shall constitute my findings of fact and conclusions of law.

Submit decree.