VISTAR, S.A., Plaintiff-Appellant,

v.

M/V SEA LAND EXPRESS, etc., et al., Defendants-Appellees.

No. 85-2127
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

April 11, 1986.

Frederick M. Boss, Houston, Tex., for plaintiff-appellant.

Joseph Newton, Houston, Tex., for M/V Sea Land Express.

Humberto L. Juarez, Jr., Laredo, Tex., for Victory Transfer.

Michael E. Warrick, Houston, Tex., for Carolina Cas. Ins.

Before REAVLEY and HILL, Circuit Judges.*

ROBERT MADDEN HILL, Circuit Judge:

At issue in this case is who shall incur the loss for a varnishing machine which was damaged when it passed under a low highway overpass. Vistar, S.A. (Vistar), who purchased this machine in France, contracted with Sealand Service, Inc. (Sealand) to transport it from Le Havre, France (a port), to Nuevo Laredo, Mexico (an inland city). Sealand carried the machine as far as Houston, Texas, where Sealand's subcontracted carrier, Victory Transfer Co., Inc. (Victory), loaded the machine onto one of its trucks for the overland journey to Nuevo Laredo.

Victory procured a permit from the Texas Department of Public Safety to carry the tall machine on the highways. The route charted on the permit called for Victory to travel on Highway 35 Business. When the trucker followed Highway 35 Bypass instead, the varnishing machine collided with a low railroad bridge and was damaged to the extent of $90,446.86.

The district court held that the parties' contract of carriage (evidenced in the bill of lading) absolved defendants Sealand and Victory from liability for the trucker's negligence. Finding further that Vistar did not introduce evidence to show that Victory "intentionally and deliberately deviated from the instructed route," so as to abrogate the contract, the district court rendered judgment against Vistar. Vistar appeals.

## I.

### A. The Contract.

At trial Vistar made out a prima facie case for liability by defendants.[1] Defendants then sought to overcome this showing by pointing to an exculpatory clause in their bill of lading which read:

This bill of lading shall have effect subject to all of the provisions of the Carriage of Goods by Sea Act ["COGSA" 46 U.S.C. §§ 1300–1315].... The defenses and limitations of said Act shall apply to goods whether carried on or under deck, to carriage of goods between U.S. ports, or between non-U.S. ports, before the goods are loaded on and after they are discharged from the vessel, and throughout the entire time the goods are in the actual custody of the carrier, whether acting as carrier, bailee, or stevedore.[2]

---

* Due to his death on March 27, 1986, Judge Albert Tate, Jr. did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. 46(d).

1. A shipper makes out a prima facie case by proving delivery to the carrier in good order and receipt from him in bad order. G. Gilmore & C. Black, *The Law of Admiralty* § 3–23 (1975).

2. This provision was preceded by a paragraph which read as follows:

Defendants maintain that by virtue of this contract provision, they are entitled to the protections of section 1304(2)(a) of COGSA which provides that "[n]either the carrier nor the ship shall be responsible for loss or damage arising or resulting from—[a]ct, neglect or default of the master, mariner, pilot, or the servants of the carrier in the navigation or in the management of the ship." 46 U.S.C. § 1304(2)(a).

Vistar protests that such an interpretation is unreasonable. Admitting that COGSA applies to both the overland and crossocean portions of the journey, Vistar nevertheless insists that section 1304(2)(a), by its express terms applies only to the navigation of "ships," defined in section 1301(d) as "vessel[s] used for the carriage of goods by sea."

We agree with Vistar. Even assuming (without finding) that the machine was in "the actual custody of the carrier" when it was damaged by Victory (the subcontracted carrier), we hold that, in the context of the parties' contract, section 1304(2)(a) applies only to ships and that, therefore, defendants are not entitled to its protection.[3]

At trial, defendants bore the burden of demonstrating that their contract relieved them of liability, *Vana Trading Co. v. SS METTE SKOU*, 556 F.2d 100, 105 (2d Cir.), *cert. denied*, 434 U.S. 892, 98 S.Ct. 267, 54 L.Ed.2d 177 (1977), *cited with approval in Nitram, Inc. v. Cretan Life*, 599 F.2d 1359, 1373 n. 32 (5th Cir.1979); moreover, ambiguities in the contract unresolved at

> In accepting this bill of lading, the shipper, consignee, holder hereof, and the owners of the goods agree, the same as if signed by each of them, that the receipt, custody, carriage, relay, delivery and any transshipping of the goods are subject to the terms appearing on the face and back hereof, which shall govern the relations, whatsoever they may be, between shipper, consignee, the owners of the goods and any holder hereof and carrier, its agents, contractors, employees, master and vessel in every contingency occurring and whether carrier be acting as such or bailee. Our analysis focuses on the contract provision quoted in the text as it relates more specifically to the availability of COGSA defenses and limitations.

trial are to be resolved against the party who drafted the contract. *See Compania de Navigacion v. Brauer*, 168 U.S. 104, 18 S.Ct. 12, 42 L.Ed. 398 (1897); *Mamiye Bros. v. Barber Steamship Lines, Inc.*, 241 F.Supp. 99 (S.D.N.Y.1965), *aff'd*, 360 F.2d 774 (2d Cir.), *cert. denied*, 385 U.S. 835, 87 S.Ct. 80, 17 L.Ed.2d 333 (1966); *Pannell v. S.S. American Flyer*, 157 F.Supp. 422, 429 (S.D.N.Y.1957), *modified on other grounds*, 263 F.2d 497 (2d Cir.1959), *cert. denied*, 359 U.S. 1013, 79 S.Ct. 1151, 3 L.Ed.2d 103 (1959); *see also The Monrosa v. Carbon Black, Inc.*, 359 U.S. 180, 183, 79 S.Ct. 710, 712, 3 L.Ed.2d 723 (1959).

Defendants have failed to sustain their burden of showing that the ambiguity in the parties' contract should be resolved in their favor. Admittedly, one of the purposes underlying section 1304(2)(a) is to absolve carriers from liability for acts of employees which are entirely beyond the carriers' control.[4] Were this the error-in-navigation defense's sole implicit rationale, we would reject the limiting construction Vistar seeks to impose on the word "ship" and apply section 1304(2)(a) to trucks as well. We believe, however, that "ship" is laden with significance and that the error-in-navigation defense applies expressly to seagoing vessels because the conditions under which ships' pilots perform their duties are sufficiently taxing that errors in navigation and isolated instances of negligence do not bear substantially on a pilot's competency. This we do not conceive to be the

3. We are construing the bill of lading in this case based on the intent of the parties. We have not attempted to interpret the bill of lading under the Harter Act, 46 U.S.C. §§ 190–196, because the applicability of the Harter Act was not raised in the district court.

4. Section 1304(2)(a)'s counterpart is 1301(a)(b) of COGSA which provides that "the carrier shall be bound, before and at the beginning of the voyage, to exercize due diligence to properly man ... the ship." Under COGSA, then, the doctrine of vicarious liability for negligent errors in navigation is rejected in favor of a rule that assesses liability against a carrier only for its own lack of due diligence. *See Imperial Commodities Corp. v. Grace Line, Inc.*, 517 F.2d 404 (2d Cir.1975).

case when a trucker is unable to follow a specified route on a highway; and, absent a clear expression of the parties' intent to extend the protection of error-in-navigation defense to trucks, we decline to infer such intent.[5] We therefore find that the district court's decision that the parties' contract immunized defendants from liability is erroneous.

### B. Deviation.

In maritime law, a deviation is defined as a "voluntary departure without necessity or any reasonable cause from the regular and usual course of the ship insured." *The Willdomino v. Citro Chemical Co.*, 272 U.S. 718, 727, 47 S.Ct. 261, 262, 71 L.Ed. 491 (1927) (quoting *Constable v. National S.S. Co.*, 154 U.S. 51, 66, 14 S.Ct. 1062, 1068, 38 L.Ed. 903 (1894)).[6] If the ship is found to have unreasonably deviated from its intended route, the carrier's contractual defenses ... to liability are ousted and the carrier's full insurer liability is restored. *See Spartus Corp. v. SS YAFO*, 590 F.2d 1310 (5th Cir.1979).

Having determined that defendants' contract does not shield them from liability for Victory's error in navigation, we need not decide whether a deviation abrogated the defendants' error-in-navigation defense. However, because there may be additional issues on remand which are interconnected with the issue of deviation, we shall review the district court's finding that no deviation occurred.

The district court found that "no evidence was presented that the driver intentionally and deliberately deviated from the instructed route." We believe that Vistar's appellate brief cannot fairly be read as challenging the correctness of this finding and therefore affirm the district court with respect to this issue.

### II.

Having decided the issue of liability in Vistar's favor, there remains to be determined the amount Vistar is entitled to recover under the bill of lading. The case must be remanded for that purpose.

We **REVERSE** the judgment of the district court and **REMAND** for a determination of Vistar's damages and for entry of judgment consistent with this opinion.

---

5. We note in this regard that section 1304(2)(a) is one of many defenses provided for in section 1304. Most of these make no explicit reference to "ships" or to the "sea" and are equally compelling whether applied to ships or trucks. Sections 1304(2)(d)–(i), for example, exempt the carrier from liability for acts of God, war, public enemies and seizure under legal process. Section 1304(2)(j) makes the carrier not liable for strikes or lockouts. Sections 1304(2)(m)–(p) exonerate the carrier for certain defects in the goods and their packagings. Denying effect to § 1304(2)(a) in the context of overland transportation, therefore, does not deny effect to the parties' contract. Each of the above-cited defenses could validly be extended to parties other than the shipowner-carrier if the contract so provided.

6. Vistar urges in its appellate brief that a deviation need not be a voluntary affirmative act, but rather that gross negligence is sufficient. Vistar's case authority does not support this proposition. In *The Willdomino* the Court found that the gross negligence which created the need for a departure from the intended route would result in a characterization of that departure as "unreasonable." The court did not, however, dispense with the requirement that there be a conscious, knowing and voluntary decision to change course.