**VANA TRADING CO., INC., Plaintiff,**

v.

**S.S. METTE SKOU, her engines, boilers, etc.,**

**and**

**Flota Mercante Grancolombiana, Defendants and Third-Party Plaintiffs,**

v.

**Ove SKOU and International Terminal Operating Co., Inc., Third-Party Defendants.**

**No. 75 Civ. 1278(MP).**

United States District Court, S. D. New York.

July 9, 1976.

Purrington & McConnell, New York City, by John H. McConnell, and Stephen A. Agus, New York City, for plaintiff.

Giallorenzi & Stiles, New York City, by Renato C. Giallorenzi, New York City, for defendants and third party plaintiffs.

Haight, Gardner, Poor & Havens, New York City, by M. E. De Orchis, Chester D. Hooper and Vincent M. De Orchis, New York City, for third party defendant (Ove Skou).

Hill, Rivkins, Carey, Loesberg & O'Brien, New York City, by Martin B. Mulroy, and Bruce J. Hector, New York City, for third party defendant (International Terminal Operating Co., Inc.).

## FINDINGS AND OPINION

POLLACK, District Judge.

This admiralty cargo suit was brought by Vana Trading Co. (hereinafter "Vana") against the S/S Mette Skou and its time-charterer, Flota Mercante Grancolombiana S.A. (hereinafter "Flota") for alleged damage and loss to a shipment of 5,000 cartons of Colombian yams. Flota impleaded the owner of the vessel, Ove Skou, and the stevedoring company at New York, Inter-

national Terminal Operating Co., Inc. (hereinafter "I.T.O.") as third party defendants.

The S/S Mette Skou was time chartered by Flota from her owner, Ove Skou, on a Time Charter form approved by the New York Produce Exchange, with some changes, which was dated April 26, 1974.

The yams in question were shipped late in the season from Colombia, South America. They had matured in November or December 1973, months before shipment, but were not shipped at that time. Instead, they were allowed to remain in the ground from November or December 1973 until they were harvested in March 1974. After harvesting, they remained in the storage sheds before they were finally packed into the cardboard cartons used for shipping.

On June 15, 1974, the yams were individually wrapped in unprinted newspaper and packed into the cardboard boxes which contained only two hand holes and a slit for ventilation. The yams were trucked to Cartegena, Colombia. After storage in a government warehouse, they were brought to the pier on June 18, or 19, 1974, subsequent to the vessel's arrival.

When the Mette Skou arrived at Cartegena, the Charterer informed the vessel's officers that the Charterer had booked 5,000 cartons of yams. At that time, only the deep tanks on the vessel were empty and available for cargo. The shipper examined the deep tanks and the ventilation system which serviced the deep tanks, and did not object to the storage of the yams in the deep tanks.

At the time that the yams left Cartegena, Colombia, defendant Flota delivered to the shipper's forwarding agent a bill of lading numbered 1, dated at Cartegena, Colombia, June 1974 and signed by Flota's authorized Cartegena Agents, which recited receipt in apparent good order and condition of the 5,000 cartons of yams consigned to the order of Vana at the Port of New York. The Bill of Lading was executed by Flota's authorized Cartegena agents on behalf of Flota; and for and on behalf of the Master of the S/S Mette Skou. The Instituto Colombiano Agropecuario of the Republic of Colombia's Ministry of Agriculture issued a certificate stating that the yams were found to the best of the inspector's knowledge to be substantially free from injurious diseases and pests, and were believed to conform to the current phytosanitary regulations of the United States.

The proof showed that the shipment together with two other shipments of yams were loaded aboard the S/S Mette Skou, under deck and stowed in the port and starboard No. 3 hatch deep tanks at the direction of the Master.

The cartons of yams were stowed 10–13 tiers high with 2 x 4's between every third tier. The cartons were set out about eight to nine inches from the wings of the tanks with air channels both fore and aft and athwart ship each about six to ten inches wide. Ventilation was provided by two six inch service pipes which extend at the sides to the main deck. The electrically-operated ventilation system for the deep tanks was run continuously through the entire voyage until the yams were discharged at New York.

When the vessel arrived in New York on July 1, 1974 at 0700 hours request was made by the vessel's officers to the Charterer, Flota, and to I.T.O., the defendant stevedore, to begin discharge of the yams immediately after arrival. New York was experiencing a heat wave at the time. However, Flota and I.T.O. failed to begin discharge of the cargo until July 2, 1974. After discharge the cartons were placed in I.T.O.'s warehouse, which was not adequately ventilated.

The yams were delivered by I.T.O. on behalf of Flota in a damaged and cooked condition. At the time of delivery the yams exhibited excessive heat, moisture, sprouting and tissue breakdown. The plaintiff claimed that it attempted to sell the yams to various wholesale dealers but was unsuccessful because the yams were damaged and decayed. The plaintiff also claimed that it dumped the yams but the evidence was inconclusive concerning the extent of the dumping involved.

■ Pursuant to the terms of the charter party, the Charterer had the entire responsibility and authority for the load, stow and trim of the cargo under the supervision of the Captain. The charter party did not warrant or express that the No. 3 deep tanks were suited for the carriage of yams, and as between the owner of the vessel and the Charterer, the decision to load yams in the No. 3 deep tanks was ultimately made by the Charterer. The participation of the officers of the vessel in the loading was as the agents for the Charterer Flota, and not for the owner. *Nichimen Co. v. M.V. Farland*, 462 F.2d 319 (2d Cir. 1972); *International Produce, Inc. v. S.S. Frances Salman*, 1975 A.M.C. 1521 at 1544–5 (S.D.N.Y.1975).

■ The evidence satisfactorily establishes that the ship was not unseaworthy; that ventilation was not warranted in the charter party but in fact existed and that the ventilation was appropriate in the deep tanks for the shipment of merchantable cargo delivered on board in good condition, properly packed and wrapped. Consequently, the third party claim of Flota against Ove Skou cannot be sustained and is to be dismissed with costs to be assessed against Flota. Ove Skou is entitled to recover legal expenses the amount of which has been agreed upon by the parties to be $9,036.24.

■ Plaintiff must, in order to make out a prima facie case against Flota, the Charterer, prove by a preponderance of the credible evidence that the yams were delivered to the vessel in good order and condition. *North American Steel Products Corp. v. Andros Mentor*, 1969 A.M.C. 1482 (S.D.N.Y.1967). The burden is on the plaintiff to show that the perishables were free of latent pathological disease or injury. *J. Howard Smith, Inc. v. S.S. Maranon*, 501 F.2d 1275 (2d Cir. 1974), *cert. denied*, 420 U.S. 975, 95 S.Ct. 1399, 43 L.Ed.2d 655 (1975). That burden was carried by the plaintiff, since the preponderance of the credible evidence, including the testimony of experts and others who inspected the yams in New York, as well as the proof concerning the condition and handling of the yams in Colombia, demonstrated that the damage suffered by the cargo was caused by the conditions to which it was subjected in transit, and not by any inherent defects.

There is a suggestion from the defendants that the yams may nonetheless have suffered from some inherent vice and it is unclear that they did not. However, no finding can be made that there was inherent vice. The most that can be said is that the yams were in susceptible condition for the results which followed their preparation for shipment, stowage, transportation, delayed discharge, warehousing and delivery. What happened in the packing and handling of the yams after their collection for transportation gives a firmer inference of the basis of the damage occasioned.

The yams had been packed in cartons that may be described as non-breathing and had been wrapped in newsprint, an unsuitable wrapping for such a commodity, which produced a cooking effect. They were then stowed in the deep tanks some 13 tiers high and subjected to a measure of heat which caused the yams to continue the cooking process and decay. Any of these circumstances alone probably would not have resulted in the damage. Their combination, together with the conduct of I.T.O. as hereafter indicated, brought on the destruction of the yams to the major extent that has been established. Thus, the damage was due to a combination at least of the circumstances created or contributed to by the shipper and the Charterer and was enhanced by the manner of performance of I.T.O. of its obligations.

In removing the cartons and storing them until delivery, I.T.O. negligently destroyed further quantities of the commodity by its harsh handling in the removal causing the collapse of cartons and damage to contents and by the subsequent unventilated storage of the commodity until delivery to the consignee. I.T.O. thereby contributed to and aggravated the fault assessable against Flota in a measurable amount but here again, one that can only be estimated.

■ When there is concurrent fault in the fashion described, the loss occasioned thereby does not entitle a shipper to whom some of the fault is attributable to claim a recovery for the full value as a premium for its fault. The rule is clear that when two or more parties have contributed by their fault to cause property damage in a maritime cargo situation, liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault and that liability for such damage is to be allocated equally only when the parties are equally at fault or when it is not possible fairly to measure the comparative degree of their fault. *See United States v. Reliable Transfer Co.*, 421 U.S. 397, 411, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975); *Selcamerica, Inc. v. S.S. Barberbrook*, 390 F.Supp. 462 (S.D.N.Y.1975).

■ The Court is called upon to fix the damages under the well-settled rule that where there are wrongdoers and there is uncertainty, the risk of the uncertainty which wrong has created will be resolved from the circumstances in the best way possible by the trier of fact. *See Perma Research & Development Co. v. Singer Co.*, 542 F.2d 111 (2d Cir. 1976). Such a resolution has been applied in the admiralty context. *See, e.g., Petition of M/V Elaine Jones*, 480 F.2d 11, 23–24 (5th Cir. 1973), *modified on other grounds*, 513 F.2d 911, *cert. denied*, 423 U.S. 840, 96 S.Ct. 71, 46 L.Ed.2d 60 (1975).

In connection with that doctrine, the liability of I.T.O. to Flota represents a claim over by Flota to the extent that I.T.O. contributed to the damage. It does not increase the amount of the plaintiff's claim but is an element in determining the comparative fault of Flota and I.T.O.

At the suggestion of the Court, the parties sought to determine and fix the respective liability. They have stipulated and agreed among themselves, without prejudice to their rights of appeal from all adverse rulings of the Court as to any party (including the allocations of fault implicit in the amounts referred to hereafter) that the total compensable loss involved to the consignee was $78,358.50. They have also agreed that the degree of fault allocable to each party cannot be determined to a mathematical certainty from the evidence, and in accordance with the rule of damages stated by the Court, the plaintiff and defendant have consented to divide the damages equally subject to the aforementioned appeal by which Flota will claim that it does not owe the award. This results in a recovery by the plaintiff in accordance with the stipulation of the parties of $39,179.25 which shall be inclusive of interest but subject to costs against the defendant Flota. Finally, the defendant Flota and third-party defendant I.T.O. have agreed that the latter's liability should be assessed at $1,000 which shall be inclusive of interest but subject to costs in favor of Flota.

To summarize, judgment of dismissal is to be entered on behalf of Ove Skou as against Flota and it shall recover its expenses and counsel fees which are agreed to amount to the sum of $9,036.24 inclusive of interest and costs.

The plaintiff, Vana Trading, shall recover against Flota the sum of $39,179.25 with costs to be taxed and Flota in turn shall recover against I.T.O. the sum of $1,000 with costs to be taxed.

The parties entitled to such recoveries shall have execution therefor.

The foregoing together with the decision of May 19, 1976 shall constitute the findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

SO ORDERED.