VANA TRADING CO., INC.,
Plaintiff-Appellee-Cross-Appellant,

v.

S.S. "METTE SKOU", her engines, boilers, etc., and Flota Mercante Grancolombiana, S.A., Defendant-Third-Party Plaintiff-Appellant-Appellee,

v.

Ove SKOU and International Terminal Operating Co., Inc., Third-Party Defendants-Appellees-Cross-Appellants.

Nos. 547, 679, 986, 987, Dockets 76–7386, 76–7393, 76–7417 and 76–7446.

United States Court of Appeals, Second Circuit.

Argued March 11, 1977.

Decided May 20, 1977.

Purrington & McConnell, New York City
(John Hay McConnell and Stephen A. Agus,
New York City, of counsel), for plaintiff-ap-

pellee-cross-appellant, Vana Trading Co., Inc.

Renato C. Giallorenzi, New York City, for defendant-third-party plaintiff-appellant-appellee, Flota Mercante Grancolombiana, S.A.

Haight, Gardner, Poor & Havens, New York City (Chester D. Hooper, Vincent M. DeOrchis and M. E. DeOrchis, New York City, of counsel), for defendant-appellee Ove Skou.

Hill, Rivkins, Carey, Loesberg & O'Brien, New York City (Martin B. Mulroy and Bruce J. Hector, New York City, of counsel), for third-party defendant-cross-appellant-appellee, International Terminal Operating Co. Inc.

Before SMITH and FEINBERG, Circuit Judges, and TENNEY, District Judge.*

TENNEY, District Judge:

This admiralty cargo suit involves the damage and loss to a shipment of yams. It also represents an invitation to apply to cargo suits the doctrine of proportionate fault recently made applicable to collision and stranding cases by *United States v. Reliable Transfer Co.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), an invitation which we decline.[1]

Suit was brought by Vana Trading Co., Inc. ("Vana"), the consignee of the yams, against the S.S. Mette Skou and her time-charterer, Flota Mercante Grancolombiana, S.A. ("Flota"). Flota impleaded the owner of the vessel, Ove Skou ("Skou"), and the stevedoring company at New York, International Terminal Operating Co. Inc. ("I.T.O.") as third-party defendants.[2] After trial District Judge Milton Pollack held on the

evidence that the loss was caused by a combination of circumstances attributable to Vana, the consignee, to Flota, the time-charterer, and to I.T.O., the stevedore. *Vana Trading Co., Inc. v. S.S. Mette Skou*, 415 F.Supp. 884, 887 (S.D.N.Y.1976). He further held that allocation of liability for damages proportionate to each party's comparative degree of fault was appropriate. Accepting the parties' agreement "that the degree of fault allocable to each party cannot be determined to a mathematical certainty," *id.* at 888, Judge Pollack confirmed the allocation of damages contained in that agreement without prejudice to their rights of appeal with respect to such allocation.[3] Finding the allocation between Vana and Flota improper, we reverse.

The facts and findings as developed on the trial are as follows. The S.S. Mette Skou was time chartered from her owner, Skou, on a New York time charter form dated April 26, 1974. The form contained the usual clause 8 which made the captain and crew the borrowed servants of the charterer, Flota, and not servants of the shipowner, Skou, for the purpose of loading, stowing and discharging cargo on the ship. When the Mette Skou arrived at Cartagena, Colombia in mid-June 1974, Flota advised the vessel's officers that Flota had booked 5,000 cartons of yams. These yams had matured in November or December 1973 but were allowed to remain in the ground from that time until they were harvested in March 1974, after which they remained in stowage sheds until June 15, 1974 when the shipper, Exportadora Andina Ltda. ("Andina") individually wrapped them in unprinted newspaper and packed them into cardboard boxes which contained only two hand

---

* United States District Judge for the Southern District of New York, sitting by designation.

1. We declined a similar invitation in *Reliable Transfer Co., Inc. v. United States*, 497 F.2d 1036 (2d Cir. 1974), *rev'd*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), for reasons equally applicable to the instant case.

2. Vana's complaint lay *in personam* against Flota under the bill of lading contract signed by Flota's Cartagena agents; the owner Skou appeared *in personam* in response to Flota's

third-party complaint as did I.T.O. No *in rem* action or jurisdiction is involved herein.

3. The total loss was stipulated as $78,358.50. The parties stipulated that these damages should be divided equally between Flota and Vana—$39,179.25 each—and that Flota was entitled to a recovery against I.T.O. of $1,000. Judge Pollack confirmed this apportionment. 415 F.Supp. at 888.

holes and a slit for ventilation. They were then trucked to Cartagena, stored in a government warehouse and delivered to the pier on June 18 or 19, 1974, subsequent to the vessel's arrival. At that time only the deep tanks and several 'tween decks on the vessel were empty and available for cargo. The shipper, Andina, examined the deep tanks and the ventilation system servicing them and did not object to the storage of the yams in the deep tanks.

The shipment involved herein, together with two other shipments of yams, were loaded aboard the S.S. Mette Skou under deck and stowed in the port and starboard No. 3 hatch deep tanks at the direction of the Master. The cartons were stowed 10–13 tiers high with 2 × 4's between every third tier. The cartons were set out about eight to nine inches from the wings of the tanks with air channels both fore and aft and athwart ship, each about six to ten inches wide. Ventilation was provided by two six-inch service pipes which extended at the sides to the main deck. The electrically-operated ventilation for the deep tanks was run continuously through the entire voyage until the yams were discharged at New York.

■ At the time the yams left Cartagena, Flota delivered to Andina's forwarding agent a bill of lading dated June 19, 1974, executed by Flota's Cartagena agents both on behalf of Flota and for and on behalf of the Master of the vessel, which acknowledged receipt in Colombia of the 5,000 cartons of yams in apparent good order and condition and stated that they were consigned to the order of Vana at New York.[4] The Instituto Colombiano Agropecuario of the Republic of Colombia's Ministry of Agriculture issued a certificate stating that the yams, to the best of the inspector's knowledge, were substantially free from injurious diseases and pests, and were believed to conform to the current phytosanitary regulations of the United States.

Although the S.S. Mette Skou arrived in New York on the morning of July 1, 1974, Flota and I.T.O. failed to begin discharge of the yams until July 2, 1974, despite a request by the vessel's officers that discharge begin immediately after arrival. Furthermore, after discharge, the cartons were placed in I.T.O.'s warehouse, which was not adequately ventilated. When the yams were delivered to Vana by I.T.O. on behalf of Flota they were in a damaged and cooked condition, exhibiting excessive heat, moisture, sprouting and tissue breakdown.

■ Judge Pollack concluded on the basis of the foregoing that the third-party claim of Flota against Ove Skou, the owner of the vessel, should be dismissed with costs assessed against Flota. We agree. The trial judge found that the officers of the vessel participated in the loading of the cartons of yams as agents for Flota, and not on behalf of the shipowner. He further found "that the ship was not unseaworthy; that ventilation was not warranted in the charter party but in fact existed and that the ventilation was appropriate in the deep tanks for the shipment of merchantable cargo delivered on board in good condition, properly packed and wrapped." 415 F.Supp. at 887.[5] On the record we find no reason to disturb these findings or his legal conclusion. *Nichimen Co. v. M.V. Farland*, 462 F.2d 319 (2d Cir. 1972); *International Produce, Inc. v. S.S. Frances Salman*, 1975 A.M.C. 1521, 1544–45 (S.D.N.Y.1975).

We cannot agree, however, with the trial court's allocation of liability between Vana and Flota. On this issue, we read Judge Pollack's opinion as holding that there was no inherent vice in the yams and that they were delivered to the vessel in good order and condition, free of latent pathological

---

4. A clean bill of lading in the case of packaged goods merely attests to apparent good condition of cargo, based on external inspection. *United States v. Lykes Bros. Steamship Co., Inc.*, 511 F.2d 218, 223 (5th Cir. 1975).

5. Had the trial court found the ship unseaworthy due to a faulty or improper ventilation system, there is authority for an equal division of damages as between the owner and the charterer. *International Produce Inc. v. S.S. Frances Salman*, 1975 A.M.C. 1521, 1546–47 (S.D.N.Y.1975).

disease or injury. 415 F.Supp. at 887. Although Judge Pollack stated that "[t]he most that can be said is that the yams were in susceptible condition for the results which followed their preparation for shipment, stowage, transportation, delayed discharge, warehousing and delivery," *id.*, such a condition does not amount to an inherent vice. The Supreme Court has accepted a jury charge defining the latter term as " 'any existing defects, diseases, decay or the inherent nature of the commodity which will cause it to deteriorate with a lapse of time.' " *Missouri Pacific R.R. v. Elmore & Stahl*, 377 U.S. 134, 136, 138–39, 84 S.Ct. 1142, 1143, 12 L.Ed.2d 194 (1964).[6] By using the term "susceptible" in this context Judge Pollack would seem to have meant only that the yams were particularly able to be affected by the conditions under which they were packed, stowed and unloaded and not that their condition was such that they would have deteriorated merely through "a lapse of time." Moreover, Judge Pollack found that "the damage suffered by the cargo was caused by the conditions to which it was subjected in transit, and not by any inherent defects," and that "the damage was due to a combination at least of the circumstances created or contributed to by the shipper and the Charterer and was enhanced by the manner of performance of I.T.O. of its obligations." 415 F.Supp. at 887. Specifically, the shipper's packing of the yams—"which produced a cooking effect"—and the charterer's stowage of the yams—"which caused the yams to continue the cooking process and decay"—combined, along with the conduct of I.T.O., to cause the damage. *Id.*

The primary problem concerns the trial court's reliance on the Supreme Court's recent decision in *United States v. Reliable Transfer Co., supra*, which extended the doctrine of proportional fault to property damage in maritime collisions and stranding cases, and its failure to apply the correct rule for apportioning damages as determined by the Supreme Court over forty years ago in *Schnell v. The Vallescura*, 293 U.S. 296, 55 S.Ct. 194, 79 L.Ed. 373 (1934).[7] As was stated in *David Crystal, Inc. v. Cunard S.S. Co.*, 223 F.Supp. 273, 287 (S.D. N.Y.1963), *aff'd*, 339 F.2d 295 (2d Cir. 1964):

"There is no rule in cargo damage cases which requires the damages to be either equally apportioned among the parties negligent as in mutual fault collision cases . . . or to be proportioned among the parties at fault as in maritime personal injury cases. . . ."

The Court's action in *Reliable Transfer Co.*, while bringing the rule in collision cases into line with that in personal injury cases, does not alter this situation.

■■■ Under Sections 3–4 of the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. §§ 1303–04, a consignee or shipper such as Vana who wishes to recover against the carrier for damage to goods bears the initial burden of proving both delivery of the goods to the carrier, in this case Flota, in good condition, and outturn by the carrier or by the stevedore, for whose conduct the carrier is responsible, in damaged condition. *M.W. Zack Metal Co. v. S.S. Birmingham City*, 311 F.2d 334, 337 (2d Cir. 1962), *cert. denied*, 375 U.S. 816, 84 S.Ct. 50, 11 L.Ed.2d 51 (1963). The trial court found

6. The *Missouri Pacific* case was decided under the Interstate Commerce Act rather than COGSA. Nevertheless, the fungibility of the definition of inherent vice is indicated by the *Missouri Pacific* Court's use of a quotation from *Schnell v. The Vallescura* to support one part of its holding. 377 U.S. at 138 n. 7, 84 S.Ct. 1142, *quoting* 293 U.S. 296, 305–06, 55 S.Ct. 194, 79 L.Ed. 373 (1934).

7. Although *Schnell v. The Vallescura* was decided before the passage of COGSA in 1936, the rule of the case has been restated and followed often in the Second Circuit since that time. *J. Gerber & Co. v. S.S. Sabine Howaldt*,

437 F.2d 580, 588 (2d Cir. 1970); *Lekas & Drivas, Inc. v. Goulandris*, 306 F.2d 426, 431–32 (2d Cir. 1962); *Great Atlantic & Pacific Tea Co. v. Lloyd Brasileiro*, 159 F.2d 661, 665 (2d Cir.), *cert. denied*, 331 U.S. 836, 67 S.Ct. 1519, 91 L.Ed. 1849 (1947); *Armco Int'l Corp. v. Rederi A/B Disa*, 151 F.2d 5, 8 (2d Cir. 1945); *Edmond Weil, Inc. v. American West African Line, Inc.*, 147 F.2d 363, 366–67 (2d Cir. 1945); *Pioneer Import Corp. v. The Lafcomo*, 138 F.2d 907, 908 (2d Cir. 1943), *cert. denied*, 321 U.S. 766, 64 S.Ct. 523, 88 L.Ed. 1063 (1944); *Wessels v. The Asturias*, 126 F.2d 999, 1001 (2d Cir. 1942).

that Vana had sustained that burden, and we do not find this to be "clearly erroneous." *McAllister v. United States*, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20 (1954).[8]

■ When the consignee has proved its prima facie case, the burden shifts to the carrier to show that the loss or damage falls within one of the COGSA exceptions set forth in 46 U.S.C. § 1304(2).[9] *J. Gerber & Co. v. S.S. Sabine Howaldt*, 437 F.2d 580, 588 (2d Cir. 1971); *see Schnell v. The Vallescura, supra*, 293 U.S. at 303, 55 S.Ct. 194. Flota satisfied that burden according to the trial judge in that he found that the yams had been packed in "non-breathing" cartons in "unsuitable wrapping for such a commodity" thus establishing the section 1304(2)(m) exception, "insufficiency of packing." 415 F.Supp. at 887.

■ Once a COGSA exception is established, the burden then returns to the shipper or consignee to "show that there were . . . concurrent causes of loss in the fault and neglect of the carrier." *J. Gerber & Co. v. S.S. Sabine Howaldt, supra*, 437 F.2d at 588; *Lekas & Drivas, Inc. v. Goulandris*, 306 F.2d 426, 431–32 (2d Cir. 1962); *see Schnell v. The Vallescura, supra*, 293 U.S. at 305, 55 S.Ct. 194. The court below found that Vana had sustained this further burden by showing that the stowage of the yams some thirteen tiers high within the deep tanks, subjecting them "to a measure of heat," was a concurrent cause of the loss.[10] 415 F.Supp. at 887. Defendant I.T.O. was also found to be at fault for its

harsh handling of the cargo and for subjecting the yams to unventilated storage following discharge. *Id.* The negligence of I.T.O. is imputed to Flota but is recoverable by Flota in indemnity.

■ All the previous burdens being satisfied, the final burden rested with Flota to show what ascertainable amount of the damage was attributable to the packaging, from which it was excepted, and what was due to the improper stowage and negligent stevedoring, which were not excepted and for which Flota was chargeable. Failing this burden, Flota was chargeable with the entire loss. *Schnell v. The Vallescura, supra*, 293 U.S. at 306, 55 S.Ct. 194; *J. Gerber & Co. v. S.S. Sabine Howaldt, supra*, 437 F.2d at 588.

Rather than determining ultimate liability according to Flota's success in satisfying this burden of separating the damage, however, the trial court stated:

"The rule is clear that when two or more parties have contributed by their fault to cause property damage in a maritime cargo situation, liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault and that liability for such damage is to be allocated equally only when the parties are equally at fault or when it is not possible fairly to measure the comparative degree of fault." 415 F.Supp. at 888, *citing United States v. Reliable Transfer Co., supra*, 421 U.S. at 411, 95 S.Ct. 1708.

---

**8.** There was evidence in the form of the certificate by the Instituto Colombiano Agropecuario of the Republic of Colombia's Ministry of Agriculture (stipulated to by both Vana and Flota) and testimony by the chief officer of the vessel and by the shipper, Andina's general manager, that the cargo at time of shipment was in good order and condition. However, the consignee's burden does not mean that it must always introduce direct evidence that the cargo was in good condition when shipped. It may additionally meet its burden by showing, as was also done here, from the condition of the cargo as delivered or otherwise, that the damage was caused by the carrier's negligence and not by any inherent vice in the cargo. *Elia Salzman Tobacco Co. v. S.S. Mormacwind*, 371 F.2d 537, 539 (2d Cir. 1967).

**9.** It is not necessary for us to reconsider the question whether, under COGSA and circumstances such as those presented by this case, the carrier has the burden of proving inherent vice under 46 U.S.C. § 1304(2)(m) or the shipper has the burden of disproving that exception as a part of the requirement that it must establish the good condition of the goods upon delivery of the carrier. *See, e. g., Hecht, Levis & Kahn, Inc. v. The S.S. President Buchanan*, 236 F.2d 627, 631 (2d Cir. 1956). As was discussed in the text above, we read the trial court's opinion as holding that it was established that the yams suffered from no inherent vice.

**10.** This improper stowage, which was chargeable to Flota, is not a type of negligence by the carrier which is an excepted cause under COGSA. *See, e. g., 46 U.S.C. § 1304(2)(a).

Except for the substitution of the words "cargo situation" for the words "collision or stranding" this is virtually the precise language of *Reliable Transfer Co.* In that case, the Court overruled the ancient and harsh maritime collision and stranding rule of equal apportionment regardless of actual degree of fault, a rule which did not apply in cargo cases such as that currently on appeal. Indeed, this area of maritime law has been governed for some forty years by a rule which does allow for apportionment according to relative degree of fault, although an occasional harsh result may arise, as when the carrier is unable to sustain its final burden of proving the relative degree of fault. In such a case the carrier must bear all the damages even though it has been established that those damages were in part caused by occurrences for which it is excepted from liability. Nevertheless, the rule of *Schnell v. The Vallescura*, clearly stated and frequently applied, must govern in this case.

The trial court was unable to make a finding as to the allocable percentages of the degree of fault, nor is there any support for such a finding in the record. *Cf. Tri-Valley Packing Ass'n v. States Marine Corp.*, 310 F.2d 891, 894 (9th Cir. 1962). The parties agreed as between themselves, and the trial court concurred, that an exact apportionment could not be made and that, in accordance with the *Reliable Transfer Co.* rule quoted above, Vana and Flota would divide the damages equally, with Flota entitled to indemnification in the amount of $1,000 from I.T.O. 415 F.Supp. at 888. The parties having reserved their right to appeal such allocation, we hold that, according to the rule of *Schnell v. The .Vallescura*, Flota must bear the full amount of damages of $78,358.50, an amount for which we find adequate support in the record. We do not disturb the $1,000 indemnification award since it is unrelated to the trial court's application of a rule which we find to be in error in a maritime, noncollision cargo damage case.

Accordingly, the judgments against Flota and Vana must be reversed, and the causes are remanded to the district court with directions to enter judgment for plaintiff Vana against defendant Flota for the full amount of its damages, with costs to Vana and Skou against Flota both below and on this appeal.