**AL–HADDAD BROS. ENTERPRISES, INC., Plaintiff,**

v.

**M.S. AGAPI, her engines, boilers, furniture, appurtenances, etc., Diakan Love, S.A., and Northern Shipping Company, Defendants.**

**Civ. A. No. 82–92.**

United States District Court, D. Delaware.

Nov. 24, 1982.

L. Kent Wyatt, of Aerenson & Balick, Wilmington, Del., for plaintiff; E. Michael Keating, III of Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., of counsel.

Peter M. Sieglaff of Potter, Anderson & Corroon, Wilmington, Del., for defendant Diakan Love, S.A. Robert K. Wood of Krusen, Evans & Byrne, Philadelphia, Pa., of counsel.

Jacob Balick, of Balick & Yucht, Wilmington, Del., for defendant Northern Shipping Co. Dante Mattioni of Mattioni, Mattioni & Mattioni, Philadelphia, Pa., of counsel.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

In this admiralty action, Al-Haddad, the owner of cargo shipped on the M.S. Agapi from Wilmington to Turkey, has sued Diakan Love, the owner and operator of the M.S. Agapi, and the Northern Shipping Company, the stevedores, to recover for damage done to Al-Haddad's cargo. In essence, Al-Haddad alleges that the shipown-

er-operator and the stevedores were jointly responsible for the alleged damage. In response to Al-Haddad's suit, Northern Shipping has filed a cross-claim against Diakan Love contending that the unseaworthiness of the M.S. Agapi and not the stevedores' action was the cause of the damage to the cargo.

Prior to the incidents from which this case arises, Al-Haddad and Diakan Love entered into a charter party agreement covering the cargo shipment which provided, *inter alia,* that:

Any dispute arising under the charter is to be referred to Arbitration.

The contract between the stevedores, Northern Shipping, and Al-Haddad contained no such arbitration clause.

■ At issue before this Court is a motion made by Diakan Love, pursuant to 9 U.S.C. § 3,[1] requesting that this Court stay these proceedings and compel Diakan Love and Al-Haddad to arbitrate the dispute as is required by the charter party. In response to Diakan Love's motion, Al-Haddad contends that if this Court were to grant a stay and compel arbitration, the arbitrator would be placed in the precarious position of having to decide the negligence of one party (Diakan Love) without the presence of the other alleged joint-tortfeasor (Northern Shipping). Al-Haddad further argues that this Court must hear this action because only in federal court can the presence of all parties be ensured.[2] In addition, Northern Shipping, the party not subject to arbitration, argues that because the issues involving the liability of Diakan Love and Northern Shipping are so intertwined, this Court should either stay the entire proceeding until after Diakan Love and Al-Haddad have arbitrated, or refuse to grant Diakan Love's motion and hear the entire case at the present time.

This Court, consequently, is faced with two distinct issues. First, as a preliminary matter, this Court must decide whether it should stay the proceedings before it concerning the issues of law and fact in contention between Diakan Love and Al-Haddad. Second, if the Court answers the first question affirmatively, it must then decide whether it should stay all other claims involved in these proceedings—*i.e.,* those between Al-Haddad and Northern Shipping and those between Northern Shipping and Diakan Love—until after the arbitration is completed.

## I. THE STAY BETWEEN AL-HADDAD AND DIAKAN LOVE

Al-Haddad argues that this Court has discretion not to compel Diakan Love and Al-Haddad to arbitrate. The Court finds that it has no such discretion. Federal courts have consistently held that when presented with an arbitration agreement, they have no choice but to order a stay pending arbitration if: (1) by the terms of the contract, the issue is referable to arbitration; and (2) the moving party is not in default. *See, e.g., Schulman Investment Company v. Olin Corp.,* 458 F.Supp. 186, 188 (S.D.N.Y.); *Vespe Contracting Co. v. Anvan Corp.,* 399 F.Supp. 516, 520 (E.D.Pa. 1975).

---

1. 9 U.S.C. § 3 entitled, "Stay of Proceedings Where Issue Therein Referable To Arbitration", states:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

2. This Court could not force Northern Shipping to join in the arbitration because it is clear beyond any doubt that a party not contractually bound by an arbitration agreement cannot be made a party to such an arbitration. *See, e.g., United Steelworkers of America v. Warrior & Gulf Navigation,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960); *Vespe Contracting Co. v. Anvan Corp.,* 399 F.Supp. 516, 520 (E.D.Pa.1975); *Lawson Fabrics, Inc. v. Akzona, Inc.,* 355 F.Supp. 1146, 1148 (S.D.N.Y. 1973).

First, the issues involved in this case are clearly referable to arbitration under the terms of the charter party. The charter agreement contains a broad arbitration clause. The United States Court of Appeals for the Third Circuit has held that when presented with such a generalized clause, only the most forceful evidence of the parties' intention to exclude the claim at issue from arbitration will allow a court to deny arbitration. *United Engineering and Foundry Emp. Ass'n. Independent Union v. United Engineering & Foundry Co.,* 389 F.2d 479, 484 (3d Cir.1967); *see Else v. Inflight Cinema Intern, Inc.,* 465 F.Supp. 1239, 1244 (E.D.Pa.1979) (parties required to submit to arbitration disputes that reasonably could be interpreted to fall within arbitration agreement). The plaintiff, Al-Haddad, points to no evidence that would demonstrate to this Court that a dispute concerning damage to cargo would not fall within the arbitration clause. In fact, it would appear to this Court that a dispute as to cargo damage would epitomize the type of issue that is referable to arbitration.

Second, the plaintiff has not demonstrated that Diakan Love was in default when seeking to arbitrate. Al-Haddad does argue that Diakan Love has waived its right to arbitrate this issue by its participation in discovery. This Court finds that Diakan Love has not taken any action that clearly demonstrates a waiver. *See Gavlik Constr. Co. v. H.F. Campbell Company,* 526 F.2d 777, 783 (3d Cir.1975) (waiver of arbitration agreements is not to be lightly inferred; it is not inconsistency of party's action but prejudicial effect that constitutes basis for waiver).

■ Consequently, because the issue of the damage to the cargo shipped on the Diakan Love is referable to arbitration, and because Diakan Love is not in default, this Court has no choice but to enforce the arbitration agreement. Therefore, the instant claim by Al-Haddad and Diakan Love is stayed.

Although the preceding discussion settles the above issue, this Court, by way of dictum, feels compelled to address plaintiff's contention that the presence of an alleged third party tortfeasor not subject to the arbitration agreement makes it impossible for arbitration to resolve the issues involved in this case.

■ First, plaintiff claims that this Court and the arbitrator will hear many of the same issues. Second, plaintiff contends that this Court and the arbitrator may hand down inconsistent judgments because the arbitrator will be without a necessary party. These are not factors to be considered in deciding whether or not to compel arbitration. *Schulman Investment Co. v. Olin Corporation,* 458 F.Supp. 186, 188 (S.D.N.Y. 1978); *see Acevedo Maldonado v. PPG Indus., Inc.,* 514 F.2d 614, 616 (1st Cir.1975). Moreover, a party cannot, by suing a third party not subject to arbitration, avoid its contractual obligation to arbitrate with another party. *C. Itoh & Co. v. Jordan Int'l. Co.,* 552 F.2d 1228, 1231 (7th Cir.1977).

■ Second, and more importantly, the arbitrator, most probably, will be able to resolve all the relevant issues without the presence of Northern Shipping.[3] The parties have contracted that disputes concerning the charter party and the bills of lading are to be governed by the law of the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1300, *et seq.*[4] As this Court un-

---

**3.** In its brief in opposition to the stay, Al-Haddad argues that in admiralty it is well settled that damages are allocated between the parties. In support, Al-Haddad cites language from a district court case, *Vana Trading Co., Inc. v. S.S. Mette Skou,* 415 F.Supp. 884 (S.D.N.Y. 1976). Unfortunately, the language cited to from the district court opinion is *directly* overruled by the United States Court of Appeals for the Second Circuit in 556 F.2d 100, 105–06 (2d Cir.1977). The rule is clear that liability will not be proportionally allocated under COGSA or anytime cargo is damaged.

**4.** In the U.S.A. Clause Paramount attached to the time charter between Diakan Love and Al-Haddad, the following language is found: "[T]he bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States." This Court assumes that this clause makes COGSA binding on the arbitrator no matter where arbitration takes place.

derstands that Act, the proceedings before the arbitrator will proceed as follows: (1) the owner of the cargo must prove that he delivered the cargo to the shipper in good condition and that, upon outturn, the cargo was in deteriorated condition; (2) after the cargo owner has proven this, the burden shifts to the shipowner, in this case Diakan Love, to demonstrate that the damage to the goods falls within one of the COGSA exceptions, 46 U.S.C. § 1304; (3) once Diakan Love proves a COGSA exception, the burden shifts to Al-Haddad to show that Diakan Love was responsible for part of the damages. *See Lekas & Drivas, Inc. v. Goulandris,* 306 F.2d 426, 431–32 (2d Cir.1962). If Al-Haddad passes its burden of proof by demonstrating that Diakan Love caused damage to the cargo, the burden shifts to Diakan Love to prove exactly what portion of damages is attributable to the COGSA exception. If Diakan Love cannot prove the exact amount they are not responsible for under the exceptions in the Act, it is responsible for the total amount of damages to Al-Haddad's cargo. If, after arbitration, Diakan Love believes that all or part of the damages it paid at arbitration actually were attributable to the negligence of Northern Shipping, Diakan Love may have a claim for indemnification against Northern Shipping. *See Vana Trading Co. v. S.S. Mette Skou,* 556 F.2d 100, 104–06 (2d Cir.), *cert. denied,* 434 U.S. 892, 98 S.Ct. 267, 54 L.Ed.2d 177 (1977).

As is evident from a recital of the procedure under COGSA, the arbitrator need not have Northern Shipping present to determine Diakan Love's liability. Consequently, Al-Haddad's argument that without Northern an accurate decision by the arbitrator is impossible is wrong.

## II. THE STAY OF THE ENTIRE PROCEEDINGS

After determining that this Court will stay this action as it involves Diakan Love and Al-Haddad, the question remains whether the claims between Al-Haddad and Northern Shipping, and between Northern Shipping and Diakan Love, also should be stayed until arbitration is completed. This Court has discretion to order such a stay. *Leyva v. Certified Grocers of California, Ltd.,* 593 F.2d 857, 863 (9th Cir.1979); *Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co., Inc.,* 362 F.2d 205, 206 (2d Cir.1966).

In this case, this Court will stay the entire proceedings for the following reasons. First, it is possible that Al-Haddad will have recovered the entire amount of its loss in the arbitration and will not want to pursue the matter any further. Second, the parties could agree that the evidence taken in the arbitration could be used in the trial in federal court, thereby saving this Court judicial resources. Third, the arbitration will settle the total amount of loss to Al-Haddad, leaving to this Court only to determine the proportionate liability, if any, of Northern Shipping.

For all these reasons, this Court will stay the entire proceedings until arbitration is completed. An order will be entered in accordance with this judgment.