QUIGLEY COMPANY, INC.

v.

M/V SAFIR, Her Engines, Tackle and Apparel, etc.

v.

SAFIR SHIPPING, LTD. and Arpa Shipping B.V.

SAFIR SHIPPING, LTD. and Arpa Shipping B.V.

v.

QUIGLEY COMPANY OF EUROPE LTD.

Civ. A. No. H–86–2488.

United States District Court, S.D. Texas, Houston Division.

Nov. 2, 1989.

E.V. Greenwood, Houston, Tex., for plaintiff.

William H. Seele, Houston, Tex., for defendant.

## MEMORANDUM OPINION

HOYT, District Judge.

This case involves allegations of damaged cargo brought pursuant to the Carriage of Goods By Sea Act ("COGSA"). 46 U.S.C.App. §§ 1300 *et seq.*

*The Parties:*

The plaintiff, Quigley Company, Inc. ("Quigley–USA"), is a corporation organized and existing under the laws of the State of New York. Quigley–USA is the owner and consignee of a shipment of magnesite gunning material ("Cargo") that was transported on board the M/V Safir from Cork, Ireland to Houston under Bill of Lading # 1. The M/V Safir was, at all material times, an oceangoing vessel. It is owned by Safir Shipping, Ltd. and was, at all material times chartered to Arpa Shipping B.V. ("Arpa"). Arpa is a corporation having its principal place of business in the Netherlands and is organized under the laws of the Netherlands. Arpa, in turn, charted the vessel to Quigley Company of Europe, LTD ("Quigley–Europe"). Quigley–Europe is a foreign business entity doing business in the State of Texas. Its last known mailing address is Cork, Ireland.

The defendant Safir Shipping, Ltd. ("Safir") was, and is a corporation having its principal place of business in care of its marine manager, Amons & Co., in the Netherlands. It is organized under the laws of Malta.

*Factual Background:*

The evidence shows that on November 19, 1985, the Cork/Houston Bill of Lading No. 1 was issued on behalf of Arpa and signed by the Master of the vessel. The bill of lading was a clean bill of lading, *i.e.*, there were no remarks or exceptions as to the condition of the cargo. In order to transport the cargo, Quigley–Europe through its shipping manager, entered into a charter party agreement with Arpa, the time-charterer, for the M/V Safir.

The evidence shows that the cargo was loaded aboard the M/V Safir and that the vessel departed from Cork, Ireland. It arrived at the Port of Houston on or about December 15, 1985. I.T.O. Corporation was the stevedore that discharged the cargo.

The cargo had one salient characteristic in common with portland cement—it becomes hydroscopic when exposed to moisture. Essentially, it "sets up" or hardens, and become lumpy depending on the amount of water exposure. It is undisputed that the cargo was free from moisture when it was loaded aboard the M/V Safir. According to testimony, the materials are never exposed to moisture while being manufactured, stored, or during loading aboard the vessel for overseas shipment. Nevertheless, upon arrival at the Port of Houston, the cargo was found to have been exposed to water—either sea water that entered through the hatches, ventilators, and manhole covers, or from condensation in the hold area. Most of the cargo was damaged and could not be used without an expensive reconditioning procedure. Attempts to use other portions of the material proved to be futile.

The M/V Safir is over 15 years old. Because of the M/V Safir's age, Quigley–Europe required that a hatch survey (hose-test) be performed to determine if the hatches and holds of the vessel were water-

tight and acceptable for carriage. This test was performed at Rotterdam by Marine Transport Survey Bureau. The surveyor's documents show that the vessel passed the tests and that the vessel was seaworthy. In addition, a separate independent on-hire survey was performed by H. Van Duyvendijk and Zoon. The results of this survey also showed the vessel to be in a seaworthy condition. The plaintiff did not object to the specifications and characteristics of the vessel, and, in fact, confirmed that it was seaworthy upon departure. Finally, the vessel's officers, Master Frank Heinrich and Chief Officer Peter af Ursin, inspected the vessel and the external packaging of the cargo and determined that all precautions had been taken.

On its voyage, the M/V Safir encountered severe weather, which resulted in substantial damage and disrepair to the ship's port and starboard bulwarks. The severity of the weather caused the ventilator covers to be torn off and several air pipes to be broken. As a result of the damage, seawater entered the holds of the vessel. The cargo was packaged in an inside line, hermetically sealed, tied in a swan-neck manner, and then sealed in an outer bag. The cargo was also shrink-wrapped. Quigley–Europe's chief chemist, testified that the bags were water-resistant, but not waterproof. The open-slat crates and bags were not impervious to water and the cargo was not containerized.

An analysis of the cargo by Michael C. Renz of Dixie Services of four samples of the gunning material revealed the presence of water on the tops of the bags, but no conclusive evidence of water in the material itself. Although no chlorides were found to be present in the cargo, silver nitrate testing showed positive results of water on the bags of cargo.

CONCLUSION

The COGSA applies to this case. To recover under COGSA, a plaintiff must prove that the cargo was received by the carrier in a good condition and that it was damaged upon discharge. *Pacific Employers Insurance Co. v. M/V Gloria*, 767 F.2d 229 (5th Cir.1985). "Where the char-

acter of the damage is not readily observable, ... the shipper must introduce ... evidence consisting of either (1) an inspection certificate or other testimony relating to the actual condition of the goods, or (2) [proof that] the damage ... could have occurred only while in the custody of the carrier. Schuenbaum, *Admiralty and Maritime Law*, p. 333 (1987). This proof constitutes a *prima facie* case which may be rebutted. *Blasser Bros. v. Northern Pan–American Line*, 628 F.2d 376 (5th Cir.1980).

When the owner establishes a *prima facie* case, the burden shifts to the carrier to show that the loss or damage was attributable to one of the COGSA exceptions. *Shell Oil Co. v. M/T Gilda*, 790 F.2d 1209 (5th Cir.1986). COGSA provides several exceptions to the carrier's responsibilities for loss or damage. 46 U.S.C.App. § 1304(2). These exceptions include, *inter alia,*:

a) the heavy weather or perils of the sea defense (46 U.S.C.App. § 1304(2)(c));

b) inherent vice or characteristics of the cargo (46 U.S.C.App. § 1304(2)(m));

c) insufficiency or inadequacy of packaging (46 U.S.C.App. § 1304(2)(n)); and

d) any other cause arising without the actual fault and privity of the carrier and without the fault and neglect of its agents (46 U.S.C.App. § 1304(2)(g)).

Once the carriers establish the existence of an exception, the burden returns to the owner or consignee to prove that the carrier was negligent. *Vana Trading Co., Inc. v. S.S. "METTE SKOU"*, 556 F.2d 100 (2d Cir.1977).

The carrier is bound before and at the beginning of the voyage to execute due diligence to (a) make the ship seaworthy; (b) properly man, equip, and supply the ship; and (c) to make the holds, refrigerating and cooling chambers, and all other parts of the ship on which goods are carried, fit and safe for their reception, discharge, and preservation. 46 U.S.C.App. § 1303(1). The Supreme Court has held that the test for seaworthiness is "whether the vessel is reasonably fit to carry the

cargo which she has undertaken to transport." *The Sylvia,* 171 U.S. 462, 19 S.Ct. 7, 43 L.Ed. 241 (1898). *See also Farrell Lines, Inc. v. Jones,* 530 F.2d 7 (5th Cir. 1976) ("reasonable fitness of the ship to perform or do the work at hand.").

This Court concludes that the M/V Safir was seaworthy prior to its departure from Cork, Ireland. The Court also concludes that the M/V Safir encountered weather of such a severe nature as to trigger the heavy weather or perils of the sea defense. 46 U.S.C.App. § 1304(2)(c). No evidence has been presented by the plaintiff to rebut this defense. *See Associated Metals and Minerals Corp. v. Etelae Suomin Laiva,* 671 F.Supp. 743 (M.D.Fla.1987). Finally, the Court finds and concludes that the plaintiffs have failed to provide sufficient documentary evidence of the chemical analysis of the product shipped. The president of Quigley–Europe testified that the chemical construction of the cargo was confidential and was considered to be a trade secret.

Based upon the extent of the evidence submitted by the plaintiff and the defenses proved by the defendant, the Court concludes that the plaintiff is not entitled to recover damages from the defendant. Judgment shall be entered in favor of the defendant that the plaintiff take-nothing by its suit.