**DEVEX CORPORATION et al., Appellants in No. 71-1344,**

v.

**GENERAL MOTORS CORPORATION, Appellant in No. 71-1345.**

**Nos. 71-1344, 71-1345.**

United States Court of Appeals, Third Circuit.

Argued June 9, 1972.

Decided Sept. 26, 1972.

Walter J. Blenko, Blenko, Leonard & Buell, Pittsburgh, Pa. (Frederick B. Ziesenheim, Blenko, Leonard & Buell, Pittsburgh, Pa., David F. Anderson, Potter, Anderson & Corroon, Wilmington, Del., on the brief), for Devex Corp. and others.

George N. Hibben, Hibben, Noyes & Bicknell, Chicago, Ill. (William S. Pettigrew, George A. Grove, Gen. Motors Corp., Detroit, Mich., Thomas S. Lodge, Connolly, Bove & Lodge, Wilmington, Del., Hibben, Noyes & Bicknell, Chicago, Ill., Neal A. Waldrop, Harness, Dickey & Pierce, Detroit, Mich., on the brief), for Gen. Motors Corp.

Before HASTIE, GIBBONS and MAX ROSENN, Circuit Judges.

OPINION OF THE COURT

HASTIE, Circuit Judge.

 In the decision, 316 F.Supp. 1376, from which this appeal has been taken the District Court for the District of Delaware held, after full hearing on the merits, that a lubricating process used by General Motors Corporation, hereinafter "GM," to facilitate the fashioning of metal into automobile bumpers

and other manufactures did not infringe claim 4 of Reissue Patent No. 24,017, owned by Devex Corporation and hereinafter designed as the Henricks patent.[1]

Cold forming operations, with which this patent is concerned, involve pressing a workpiece, the metal to be deformed, against or between a die or dies so that it takes on a desired form. To accomplish "deep" or difficult draws of ferrous metal great pressure must be applied, and heat is generated by the relative movement under that pressure between the surface of the die and the surface of the workpiece. One of the problems of the art is the lubricating of these surfaces in such a way that galling and scratching the workpiece and defacing and otherwise damaging the die are avoided or minimized. It also is important that any substance that adheres to the workpiece after drawing be readily and inexpensively removable.

Claim 4 of the Henricks patent discloses a method of lubricating the workpiece by "forming on the surface of the metal a phosphate coating and superimposing thereon a fixed film of a composition comprising a solid meltable organic binding material containing distributed therethrough a solid inorganic compound meltable at a temperature below the melting point of the ferrous metal phosphate of said coating. . . ."

Specifications that were part of the Henricks patent application gave examples of the claimed process, including formulas for compositions of soap and borax that would serve as the film to be superimposed on the initial phosphate coating of the workpiece.

Devex originally filed the present suit against GM and a companion suit against Houdaille Industries, Inc., another alleged infringer, in the District Court for the Northern District of Illinois. The two cases were consolidated for the limited purpose of adjudicating the common issue of the validity of Henricks claim 4. The court then proceeded to hold the patent invalid. On appeal, the Court of Appeals for the Seventh Circuit found claim 4 valid, though in a narrower context than its comprehensive language suggested, and remanded the cases for consideration of the issues of infringement. Devex Corp. v. General Motors Corp., 7th Cir. 1963, 321 F.2d 234.

At this point the courses of the suits against GM and Houdaille diverged. The suit against GM was removed to and decided by the District Court for the District of Delaware, and now is before us. The Houdaille case remained in the Northern District of Illinois where, on motion for summary judgment, the court decided that the defendant had infringed claim 4. On appeal that judgment was vacated and the cause remanded for full hearing on the merits. Devex Corp. v. Houdaille Industries, Inc., 7th Cir. 1967, 382 F.2d 17. We are told that the claim against Houdaille was then settled.

■ The first Seventh Circuit appeal, contested by Devex and GM in this very suit, held, and the subsequent Houdaille appeal confirmed, that on its face claim 4 was merely a combination of old elements that were part of the prior art. However, the Court of Appeals considered and found valid the contention of Devex that, although its process was a combination of old and familiar elements, by superimposing a film of soap and borax over a phosphate coating as its above cited specifications taught, it had achieved unexpected and surprisingly favorable results that were different from what persons skilled in the art would have anticipated from this combination upon the basis of their knowledge and experience.[2]

1. Reissue Patent No. 24017 has now expired. Thus, while a court can award damages for infringement that occurred during the life of the patent, injunctive relief is no longer appropriate.

2. It is familiar learning that in the combining of old and familiar elements the achievement of an unexpected result is needed and may suffice to make the combination patentable. Great Atlantic &

More particularly, in the prior art phosphate coatings had proved harmfully abrasive when subjected to great pressure in drawing. And though adding a soapy film might be expected to lessen abrasiveness, in practice such a supplement had caused the deposit of a stubborn insoluble residue that was difficult to remove from the workpiece. These circumstances considered, the court found that, as claimed by the inventor,[3] the Henricks combination of a soap and borax film over a phosphate coating solved both of these problems by interacting under the pressure and resultant heat of drawing to form substances that minimized abrasion during the drawing and at the same time inhibiting the adherence of a stubborn water insoluble film to the workpiece.

GM contends that it followed the essential teaching of a familiar prior art "German process" rather than the Henricks process. The German process taught a presoaking of a phosphate coated workpiece for as long as fifteen hours in a soap solution until chemical reaction of the constituents formed a water insoluble soapy film. Henricks, the inventor who obtained the patent in suit and now is president of Devex, admitted in this case that a workpiece lubricated by the German process "drew beautifully." But it is conceded that the firm adherence of a residual water insoluble film to the workpiece after drawing made the metal very difficult to clean. Indeed, Henricks testified that in some uses of the German process, "you can't remove it [the film] at all unless you burn it off in an annealing oven.

. . ." In any event, "a serious defect in . . . [the German process] was that the residual deposit was not water soluble and presented a difficult cleaning problem especially if the workpiece was to be electroplated,"[4] as were the bumpers formed under lubrication by the accused GM process.

In sum, early phosphate coatings, even spongy phosphates that were soaked in wet lubricants before drawing, were unsatisfactory because of their abrasiveness. The German process minimized abrasion and galling and thus facilitated difficult drawing, but at the same time it created a serious problem of cleaning after drawing. Henricks disclosed a combination of soap and borax superimposed on phosphate that also provided satisfactory lubricity, indeed superior lubricity for drawing under extreme pressure and heat, without making the drawn metal difficult to clean. Because Henricks was able to achieve and maximize the familiar advantages of the elements he combined and at the same time to eliminate disadvantages that had hampered their earlier use, the Court of Appeals for the Seventh Circuit concluded that he had achieved an unexpected result that made his combination inventive and patentable.

The practice of GM in lubricating its metal for drawing into the shape desired for its manufactures certainly reads on Henricks. Admittedly, the phosphate coating differs in no significant way from Henricks. And the superimposed soap-borax film is precisely what Henricks taught. In his specifications Henricks suggested soap and borax in the

Pacific Tea Co. v. Supermarket Equipment Co., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Griscom-Russell Co. v. Westinghouse Electric & Mfg. Co., 3d Cir. 1941, 121 F.2d 680.

The Court of Appeals for the Seventh Circuit stated the issue it considered and resolved in this case as follows:

"Plaintiffs concede all of the elements which Henricks employed in claim 4 of the patent in suit were old per se or in other combinations and have been available in the art for some years. However, plaintiffs contend that the elements which Henricks selected were put together in a new way and achieved a new and unexpected result." Devex Corp. v. General Motors Corp., *supra*, 321 F.2d at 236.

3. In Example XIX, the Henricks patent application specifies a "Bumper Bar Forming Lubricant" that can be "readily cleaned off so that no defective nickel plating will be caused by any lubricant residues."

4. Devex Corp. v. General Motors Corp., *supra*, 321 F.2d at 236.

proportions of as much as four or five parts of borax to one of soap. Testifying in this case he explained that borax in quantities varying according to the pressure required in particular drawing, served both to improve lubricity and to emulsify the residue which otherwise would adhere to the workpiece as a hard to remove coating.[5] The district court found in this case, pursuant to the agreement of the parties incorporated in a pretrial order, that in forming bumpers GM used only fifteen percent borax with eighty-five percent soap. However, bumper forming is not an extremely high pressure drawing such as Henricks taught would require a lubricant with very high borax content.

Henricks did not teach and GM did not allow the waiting period of many hours between lubricating and drawing which characterized the German process and, according to the evidence, may have contributed significantly, the more so in the absence of borax, to the formation of an insoluble residue and its stubborn adherence to the workpiece.

It may well be that in developing his process Henricks was concerned primarily with devising a method of lubrication that would be effective in and could be adapted to drawings that were more difficult than the GM drawings involved in this case. But at most this means that the Henricks process could be adjusted to work satisfactorily over a wide range of drawing conditions. It does not warrant an inference that GM used some other process.

■ Despite the above described close correspondence of GM lubricating practice with the teaching of the Henricks patent, the district court concluded that infringement was not proved because Devex failed to establish that GM achieved the unexpected results that made the Henricks combination patentable. In our view the record does not warrant that factual conclusion.

The practical measure of lubricity is the effectiveness of the lubricating process in minimizing galling of the workpiece and damage to the die during drawing. The record indicates that satisfactory lubricity, thus measured, was achieved both by the Henricks process and in the GM practice. Moreover, the German process, which GM purported to have used, was notably efficient in this regard, although tests indicated that the presence of borax, common to Henricks and GM but not taught by the German process, yielded even better lubricity at temperatures above 190°C.[6] And the depositions of GM technicians who observed or participated in the GM drawing also indicate that drawing was accomplished without serious galling or defacement of workpieces or dies. Accordingly, the district court properly found "that defendant's processes are effective, beneficial and an improvement over earlier solutions to their lubricating problems." 316 F.Supp. at 1378.

5. The Court of Appeals for the Seventh Circuit held that Henricks claim 4 was not made invalid for vagueness by the fact that it failed on its face to specify the proportions of soap and borax to be used. Devex Corp. v. General Motors Corp., *supra*, 321 F.2d at 238.

6. Friction between surfaces that slide while pressed together is the damaging circumstance that a lubricant must minimize by separating the adjacent surfaces. Temperature and pressure tend to cause lubricants to break down. Accordingly, the relative effectiveness of lubricants in a given environment of application is expressed by comparing their coefficients of friction in that environment. Tests introduced into this record showed that the presence of borax in lubricants for metal deforming operations was beneficial in environments hotter than 170°C. And from 190° upward Borax in increasing amounts was essential to an adequate lowering of the coefficient of friction. The GM drawings created temperatures in excess of 190°. The tests showed that both the Henricks process and the GM practice, both of which used borax, lubricated even more effectively than the German process at temperatures in excess of 190°.

It follows that if, as GM claims, its practice did not achieve the essential and characterizing results that made the Henricks disclosure patentable, its shortcoming must have been a failure to achieve easy cleanability in conjunction with the satisfactory lubricity that it did achieve.

The most important single item we find in this long record on the issue of cleanability appears, with the express approval of the opposing parties, as an admitted fact in the district court's detailed Pre-Trial Order. That order states categorically that GM experienced "no cleaning problem with either the accused process or with the lubricant "Mar-Proof," described merely as a "sticky oil," which GM used without an underlying phosphate coating before adopting the accused practice. However, the district court found that the accused practice created a "cleaning problem" because its use had to be followed by the same cleaning procedures that were used with Mar-Proof. But it is clear that, whatever the lubricant used, the workpiece requires cleaning after drawing. And when, as in the case of auto bumpers, the article is to be electroplated the surface must be most thoroughly cleaned. Since GM contends that it was using the German process, the relevant comparison here is between that process, which admittedly created a difficult cleaning problem, and the GM process which, consistent with Henricks, made possible a simple and easy cleaning of the drawn workpiece. Tests introduced into this record showed significantly easier cleaning of workpieces coated in the GM manner with a lubricant that contained borax than of workpieces coated with the German process lubricant that contained no borax.

Accordingly, neither the components of the GM lubricant, the manner in which that lubricant was used, nor the lubricity and cleanability achieved by the accused practice show any significant departure from the method of lubricating taught by Henricks or the results achieved by that method.

GM has attempted to avoid this conclusion by introducing expert testimony that the chemical interactions that occurred during drawing under the pressure and heat of the accused practice were different from those reported by Henricks in particular applications of his process. However, in evaluating this line of proof it must be kept in mind that Henricks claimed a method of lubricating a metal workpiece that yielded in drawing an unexpectedly favorable conjunction of lubricity and cleanability. He did not claim any patentable discovery of a chemical reaction or compound. Indeed, it was not essential to the patentability of the Henricks combination that he describe or even understand any chemical reactions that made it work better than other lubricating methods.[7] In brief, a showing that like or different chemical reactions occur in the course of drawings utilizing allegedly different lubricating methods may suggest inferentially that the results yielded by the methods are or are not equivalent. But if it is directly determinable that the two lubricants have essentially the same components, are applied in the same way and that the results of their use are essentially the same, the disputation of chemists about the chemical interactions that occurred in the processes cannot be decisive.

Moreover, it may well be that chemical reactions differed in degree, and perhaps in kind as well, in different applications of the Henricks process. Claim

7. Diamond Rubber Co. v. Consolidated Tire Co. (1911), 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527; Crozier-Straub, Inc. v. Graham, 3d Cir. 1928, 28 F.2d 321.

4, even as restricted and held valid in the Seventh Circuit, covers and protects the combination of soap and borax in proportions to be varied according to the nature and difficulty of the draw to be facilitated so that the process will yield its claimed advantages over a wide range of drawing pressures and temperatures. It is not claimed that in every Henricks mix under every temperature, chemical reaction and its products will be identical. Thus, if one accepts as persuasive the testimony of GM experts that reactions and substances produced during the GM drawings were not identical with those that the Henricks process is said to have produced using different proportions of ingredients under different pressures at different temperatures, it does not follow that GM practice failed to produce the results that made the Henricks process patentable.

In these circumstances, the demonstrated effectiveness of GM practice in producing the satisfactory drawing and ease of cleaning that Henricks had achieved must prevail over any contrary inference drawn from disputed expert testimony as to comparative chemistry in what may well not have been equivalent situations.

By its cross appeal GM challenges that part of the judgment of the district court which held that the decision of the Court of Appeals for the Seventh Circuit, sustaining the Henricks patent as valid in a stated limited context, was binding upon GM. The legal basis of this challenge is a contention that venue was lacking in the Northern District of Illinois where suit was instituted. The court below held that GM had waived its objection to venue. For the reasons fully and clearly stated in the district court's opinion, Devex Corp. v. General Motors Corp., D.Del.1967, 263 F.Supp. 17, we sustain that holding.

The judgment will be reversed.