**AL HADDAD BROS. ENTERPRISES, INC., Plaintiff,**

v.

**M/S AGAPI, her engines, boilers, furniture, appurtenances, etc., and Diakan Love, S.A., Defendants.**

**Civ. A. No. 82–92 CMW.**

United States District Court, D. Delaware.

May 8, 1986.

Clark W. Furlow, of Lassen, Smith, Katzenstein & Furlow, Wilmington, Del., for plaintiff; John C. Mamoulakis, of Hill, Betts & Nash, New York City, of counsel.

Peter M. Sieglaff, of Potter, Anderson & Corroon, Wilmington, Del., for defendant, Diakan Love, S.A.; Robert W. Wood, of Krusen, Evans & Byrne, Philadelphia, Pa., of counsel.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

Plaintiff Al Haddad Brothers Enterprises ("Al Haddad") brought this action to recover for damages to a cargo of salt and detergent carried from Wilmington to Turkey on board the vessel, the Agapi, owned and operated by defendant Diakan Love, S.A. ("Diakan"). Currently before the Court is the motion of Diakan for summary judgment on a counterclaim seeking recognition and enforcement of a London arbitration award in favor of Diakan against Al Haddad. A procedural history of the dispute, rather than a recitation of the underlying facts, provides the appropriate framework for decision of this question.

## I. BACKGROUND

Al Haddad filed suit in February 1982 against Diakan and the Northern Shipping Co., the stevedores, to recover for damage done to Al Haddad's cargo during its transport in February-March, 1981.[1] In answer, Diakan raised as an affirmative defense

---

1. Northern Shipping Co. settled the case with both Al Haddad and Diakan. *See* Docket No. 67.

the existence of an arbitration provision in the charter party between Al Haddad and Diakan. The clause states:

> 51. Any dispute arising under the Charter to be referred to Arbitration in London, one Arbitrator is to be nominated by the Owners and the other by the Charterers, and in case the Arbitrators shall not agree, then to the decision of an Umpire to be appointed by them, the award of the Arbitrators or the Umpire to be final and binding upon both parties. The Arbitrators and Umpire, if any, to be members of the London Arbitrators Association.

Exhibit A to Supplemental Answer of Diakan Love, S.A., ¶ 51, Docket No. 65. Diakan moved to stay proceedings until the merits of Al Haddad's claim had been decided in London pursuant to the provision in the charter party. Al Haddad opposed the stay, but did not dispute at that point that the charter party contained a provision calling for arbitration in London. The Court granted Diakan's motion and stayed the case to allow Al Haddad to pursue arbitration, *see* 551 F.Supp. 956 (D.Del.1982). Al Haddad did not seek to appeal this decision and apparently has not pursued arbitration.

In the meantime, Diakan in October 1981 initiated an arbitration proceeding in London against Al Haddad for unpaid charter hire. Diakan appointed its arbitrator, Bruce Harris, and gave notice of that fact to Al Haddad on November 3, 1981. When Al Haddad did not nominate an arbitrator by December 23, 1981, Diakan asked Harris to serve as sole arbitrator. Notice of this appointment was sent to Al Haddad on December 31, 1981. *See* Affidavit of Brian Monty Waltham ¶ 3, Docket No. 71. At one point, Al Haddad retained solicitors in relation to the arbitration, but it later discharged them and did not provide any defense in the proceeding or otherwise participate in it. Exhibit "BMW 1" to Affidavit

of Brian Monty Waltham, at 3–4 (final award of arbitrator Bruce Harris) (hereinafter referred to as "Arbitrator's Award"). Harris entered an award of $143,712.04 plus interest and costs in favor of Diakan against Al Haddad on July 12, 1983. Arbitrator's Award, at 4–5.

On March 20, 1984, Al Haddad moved this Court to vacate the stay order on the ground that Al Haddad never agreed to a provision of the charter party requiring arbitration in London. The Court denied the motion and ruled that Al Haddad's argument was barred by laches and that the charter party required it to submit its dispute to arbitration in London. Opinion and Order of October 4, 1984, Docket Nos. 48, 49. Al Haddad did not seek to appeal that decision. Diakan then sought and obtained the permission of this Court to supplement its answer to assert a counterclaim based on the London arbitration award. *See* Opinion and Order of May 22, 1985, Docket No. 63, 64.[2] Diakan now seeks summary judgment on this counterclaim.

## II. DISCUSSION

Al Haddad makes two sets of arguments in opposition to Diakan's request for summary judgment on the counterclaim. It argues first that a triable issue of fact exists—namely, whether the charter party to which the parties agreed contained a provision requiring London arbitration— and that this Court's prior decisions do not constitute the "law of the case" which would bar consideration of whether the parties agreed in the charter to London arbitration. Even if the Court should find that the parties agreed to London arbitration, Al Haddad then argues that the Court should not enforce the arbitration award because the arbitration authority which rendered the award was not composed in accordance with the alleged agreement.[3]

---

**2.** In February 1984, Diakan sued Al Haddad in the United States District Court for the Southern District of New York, seeking to enforce the London award by attaching letters of credit payable to Al Haddad. This suit later was dismissed voluntarily. *See In re Diakan Love, S.A.*

*v. Al Haddad Bros. Enterprises,* No. 84–1088, slip op. (S.D.N.Y. Apr. 4, 1985).

**3.** Under the second prong of its argument, Al Haddad also takes the position that it would be inequitable to make it pay the entire arbitration

As will be explained below, the Court will abide by its earlier decisions that the parties did agree to arbitrate in London as the law of the case. In addition, the Court finds that the London award is enforceable under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C.A. § 201 note (West Supp. 1986).

### a. Law of the Case

■ Under the law of the case doctrine, an issue, once decided, should not be relitigated except in unusual circumstances. *Hayman Cash Register Co. v. Sarokin,* 669 F.2d 162, 165 (3d Cir.1982); *see* 1B J. Moore, Federal Practice ¶ 0.404[1] (1984). Although a court retains the power to reconsider previous decisions as long as the case remains within its jurisdiction, it generally chooses not to do so, in order to promote the interest of the judicial system "in finality and in efficient administration." *Todd & Co. v. SEC,* 637 F.2d 154, 156 (3d Cir.1980); *see* 1B J. Moore, *supra,* at 117–18.

The Third Circuit has recognized three exceptions to the doctrine that permit reconsideration of an issue previously decided in a case. First, a successor judge may entertain a timely motion to reconsider the conclusions of an unavailable predecessor, *Hayman Cash Register Co.,* 669 F.2d at 169. An exception also exists when new evidence is available the second time the issue is raised, *id.* Finally, a court can reconsider a previous ruling when a supervening decision has changed an applicable rule of law. *Id.* at 170.[4]

■ This Court twice has addressed the issue of whether the charter party between

Al Haddad and Diakan contained a provision requiring arbitration of any dispute in London. In deciding originally to stay the case, the Court determined that the issue in dispute was referable to arbitration under the terms of the contract, *see* 551 F.Supp. at 958–59, and thus, as a preliminary matter, that the contract contained an arbitration clause. Of course, Al Haddad did not dispute the existence of the London arbitration clause at that point. Sixteen months after the stay was granted, Al Haddad sought to vacate it, claiming that it had never agreed to a provision requiring London arbitration. The Court denied this motion because of laches, and did not examine the merits of Al Haddad's claim. The Court concluded, however, that "[u]nder the terms of the charter party, the plaintiff must settle any disputes with the shipowner through arbitration in London." *Al Haddad Bros. Enterprises, Inc. v. MS Agapi,* No. 82–92, slip op. at 4–5 (D.Del. Oct. 4, 1984). These previous decisions comprise the law of the case on the existence of a London arbitration provision.

■ Although Al Haddad does not phrase its law of the case argument in the Third Circuit rubric set out above, it essentially seeks to invoke the exception relating to new evidence. In particular, Al Haddad argues that it would present evidence that Al Haddad never agreed to a London arbitration provision.[5] Plaintiff has possessed this evidence all along but admits that it failed to present the evidence to the Court or raise the issue of the lack of an arbitration agreement because of error and oversight. *See* Plaintiff's Memorandum of Law in Opposition, at 9. Evidence which is "new evidence" simply because plaintiff neglected to present it at a prior point in the

---

award merely because it misled Diakan to pursue an unauthorized, ex parte arbitration. Al Haddad then suggests that the amount of Diakan's legal fees for the arbitration would be an equitable remedy. *See* Plaintiff's Memorandum of Law in Opposition, at 12–13, Docket No. 74.

**4.** Other circuit courts have recognized an additional exception to the law of the case doctrine: where the first decision was "clearly erroneous" and following it would work a manifest injustice. *See, e.g., White v. Murtha,* 377 F.2d 428,

431–32 (5th Cir.1967). The Third Circuit has not adopted this exception. *Todd & Co. v. SEC,* 637 F.2d 154, 157 n. 4 (3d Cir.1980); *Hayman Cash Register Co.,* 669 F.2d at 170 n. 10.

**5.** This evidence consists of the testimony of plaintiff's officer Sahib Al Haddad and copies of the telex negotiations for the Agapi charter from Al Haddad's files. *See* Plaintiff's Memorandum of Law in Opposition, at 6–7.

proceedings does not justify an exception to the law of the case doctrine. *See Baumer v. United States,* 685 F.2d 1318, 1321 (11th Cir.1982) (plaintiffs who deliberately decided not to present certain evidence at original trial could not "resurrect a previously abandoned issue" by presenting withheld evidence at subsequent proceeding; original determination of issue was law of the case).

■ In addition, the Court adheres to its earlier conclusion that the doctrine of laches bars Al Haddad's argument that there was no agreement in the charter party regarding London arbitration. *See Al Haddad Bros. Enterprises, Inc. v. MS Agapi,* No. 82–92, slip op. at 3–4 (D.Del. Oct. 4, 1984). Sahib Al Haddad, evidently the only officer of plaintiff who knew that the company had not agreed to London arbitration, assumed responsibility for the matter in April 1983, *see* Exhibits II–JJ, MM–OO, to Affidavit of Robert K. Wood, Docket No. 41. Nevertheless, plaintiff did not raise the lack-of-arbitration-provision argument until March 20, 1984—nearly a year after Sahib Al Haddad started on the case and sixteen months after this Court originally stayed this litigation to allow arbitration. This delay is inexcusable.

The Court will abide by its earlier decisions and holds that Al Haddad and Diakan agreed to a provison in the charter party requiring them to submit any disputes to arbitration in London.[6]

### b. Enforcement of the London Award

Under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C.A. § 201 (West Supp.1986) (hereinafter "Convention"), a United States court can recognize a foreign arbitral award if the party seeking recognition has met two requirements. He must present the duly authenticated original award or a certified copy, and the original arbitration agreement or a certified copy. *Id.* art. IV(1). The party opposing recognition then

may attempt to prove one or more of the defenses permitted by the Convention. *Id.* art. V(1) (listing defenses). If the party objecting to recognition does not meet his burden of proof, the court will convert the award into a judgment.

Al Haddad makes two arguments why this Court should refuse to enforce the London award. It argues first that Diakan has not met one of the requisites for recognition of the foreign award, because Diakan has not submitted the original arbitration agreement between the parties or a certified copy. Diakan instead has appended to its Supplemental Answer an unverified document which it asserts is the parties' agreement.

Secondly, Al Haddad invokes the defense that "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place." *Id.* art. V(1)(d). In particular, the arbitration provision in the Agapi charter party called for an arbitration panel composed of one arbitrator appointed by each party and, if the two arbitrators did not agree, an umpire appointed by the two arbitrators would render the decision. Al Haddad points out that a sole arbitrator appointed by Diakan made the award here.

■ The Court rejects Al Haddad's first argument and finds that it is unnecessary for Diakan to submit a certified copy of the parties' arbitration agreement in this situation. The purpose for requiring submission of the original agreement or a certified copy is to prove the existence of an agreement to arbitrate. Such proof already exists in this case because the Court has determined on several prior instances that the charter party between Al Haddad and Diakan contained a London arbitration provision. Those rulings form sufficient verification of the existence of an arbitration

6. Plaintiff's argument that this Court's prior decisions were not final judgments, and thus not res judicata, is simply beside the point. Neither the defendant nor the Court has suggested that the doctrine of res judicata/claim preclusion applies.

agreement to allow enforcement of the award here.

■ The arbitration award Diakan seeks to enforce admittedly was not rendered in accordance with the parties' agreement, but that fact is not fatal to its validity. The Convention allows recognition of an award which, although not in accord with the parties' agreement, complied with the laws of the country where the arbitration occurred. Convention, art. V(1)(d). Under the British arbitration statute, a sole arbitrator appointed by one of the parties may decide a dispute when the other party fails to appoint an arbitrator under the agreement, after being called upon to do so. Arbitration Act, 14 Geo. 6, ch. 27, § 7(b) (1950). However, the party who has appointed an arbitrator initially must wait seven clear days after notifying the opposing party of the initial appointment before appointing its arbitrator to act as sole arbitrator. *Id.*

■ Diakan followed this procedure. Diakan's solicitors sent notice to Al Haddad on November 3, 1981, that they had appointed Bruce Harris as arbitrator. Having received no response from Al Haddad, Diakan's solicitors appointed Harris as sole arbitrator on December 23, 1981, and sent notice to Al Haddad on December 31, 1981, Affidavit of Brian Monty Waltham ¶ 3, Docket No. 71. Al Haddad does not argue that it failed to receive notice of Diakan's actions. The London award therefore is entitled to recognition and enforcement under the Convention.

The London award has several parts. First, the arbitrator awarded Diakan $143,712.04 in unpaid charter fees, along with $47,365.91 interest on that sum, at a rate of fifteen percent per annum from May 1, 1981, until July 12, 1983, the date of the award. The award also made Al Haddad liable for the costs of the arbitrator's award (£395) and Diakan's costs in pursuing arbitration. Arbitrator's Award, at 4–5. Diakan has submitted conflicting information about its costs. Its counterclaim lists costs amounting to £4,679, *see* Supplemental Answer ¶ 57, Docket No. 65, while an affidavit submitted by its London solicitors lists costs totalling £3,642. Exhibit "BMW 2" to Affidavit of Brian Monty Waltham (bill of Messrs. Ince & Co.), Docket No. 71. The solicitors' bill includes the £395 cost of the arbitrator's award. *Id.*

The Court finds that the arbitration costs for which Al Haddad is liable, including those of Diakan and the arbitrator, total £3,642. Using the exchange rate of $1.53 per pound in effect on July 12, 1983, *see* N.Y. Times, July 13, 1983, at D–14, this converts to $5572.26. Adding this figure to the basic award (including interest) of $191,077.95 yields a principal sum of $196,650.21.

■ Diakan seeks interest on this principal sum from July 12, 1983, the date of the London award, until the present. Federal courts have the power to grant such post-award, pre-judgment interest when enforcement of foreign arbitral awards is sought. *Waterside Ocean Navigation Co. v. International Navigation Ltd.*, 737 F.2d 150, 153–55 (2d Cir.1984) (remanding for computation of post-award, pre-judgment interest); *Fertilizer Corp. of India v. IDI Management, Inc.*, 517 F.Supp. 948, 962 (S.D.Ohio 1981) (court may award prejudgment interest in later proceeding); *cf. Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 62–63 (3d Cir.1986) (remanding for calculation of post-award, pre-judgment interest on arbitration award rendered under 9 U.S.C. § 9). This Court will grant interest to Diakan in order to make it whole for the wrongful deprivation of its money since 1983. *See Waterside Ocean Navigation Co.*, 737 F.2d at 154 (discussing rationale for awarding interest on English arbitration award).

Interest will be calculated under the method set forth in *Trans-World Manufacturing Corp. v. Al Nyman & Sons, Inc.*, 633 F.Supp. 1047, 1057–1058, (D.Del.1986), in which this Court granted an award of interest, compounded daily, using the adjusted prime rate established under 26 U.S.C. § 6621. The chart attached as Ap-

pendix A sets forth the Court's calculation of post-award, pre-judgment interest as of May 8, 1986. An Order will enter in conformity with this Opinion.

## APPENDIX A

Al Haddad Post-award Pre-judgment Interest (Compounded Daily)

| Time period | Award | Principal | Rate | Days | Interest |
|---|---|---|---|---|---|
| 7/12/83–12/31/83 | 196,650.21 | 196,650.21 | 11% | 173 | 10,523.10 |
| 1/1/84–12/31/84 | | 207,173.31 | 11% | 366 | 24,155.58 |
| 1/1/85–6/30/85 | | 231,328.89 | 13% | 181 | 15,401.14 |
| 7/1/85–12/31/85 | | 246,730.03 | 11% | 184 | 14,065.96 |
| 1/1/86–5/8/86 | | 260,795.98 | 10% | 128 | 9,306.68 |

Totals: $196,650.21      $73,452.45

Total (including interest): $270,102.66

Interest compounded daily using the formula: $P_1 = P_0 (1+1/n)^{mn}$,

where $P_0$ = beginning principal

$P_1$ = principal + interest at end of time period

$i$ = interest rate

$n$ = number of times compounded (daily = 365)

$n$ = number of years (or fraction of year)