**DEVEX CORPORATION, et al., Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**Frederick B. ZIESENHEIM, et al., Plaintiffs,**

v.

**TECHNOGRAPH, INC., Defendant.**

Civ. A. Nos. 3058 CMW, 83–567 CMW.

United States District Court, D. Delaware.

June 27, 1986.

Robert K. Payson, of Potter, Anderson & Corroon, Wilmington, Del. (Sidney Bender, Aaron Lewittes, Esquire and Janine L. Bender, of Leventritt, Lewittes & Bender, Garden City, N.Y., of counsel), for Technograph, Inc.

Arthur G. Connolly, and Arthur G. Connolly, Jr., of Connolly, Bove, Lodge & Hutz, Wilmington, Del. (William A. Schuetz, of Detroit, Mich., George E. Frost, of Barnes, Kisselle, Raisch, Choate, Whittemore & Hulbert, Birmingham, Mich., of counsel), for General Motors Corp.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

This patent litigation has been before this Court for more than twenty years, has

generated numerous opinions and appeals, and threatens to outlast all human participants. Currently pending is the motion of plaintiff Technograph, Inc., for a reasonable royalty and prejudgment interest in relation to previously determined infringement for non-bumper parts, and for additional interest on an award of postjudgment interest previously granted by this Court.

The Court will not set out the protracted history of this dispute because it has been reported extensively, *see, e.g.,* 494 F.Supp. 1369 (D.Del.1980); 569 F.Supp. 1354 (D.Del.1983), *aff'd.,* 749 F.2d 1020 (3d Cir. 1984), and because the current motion focuses on two limited issues. The Court instead will relate separately the relevant background on each prong of plaintiff's motion.

## I. REASONABLE ROYALTY AWARD

The patent at issue here involved a process for cold-forming steel products, which defendant General Motors Corp. ("G.M.") used to produce both bumper and non-bumper parts. Following a finding of infringement, *see* 467 F.2d 257 (3d Cir.1972), an accounting of damages was conducted before a Special Master. The Master awarded substantial damages for bumper part infringement, but concluded that the proof was too speculative to allow an award of damages for non-bumper part infringement. This Court approved the Master's Findings and Conclusions on non-bumper damages, *see* 494 F.Supp. 1369, 1377–78 (D.Del.1980).

The Third Circuit affirmed the decision not to award damages for non-bumper parts, finding that plaintiff had failed to provide credible evidence from which a reasonable royalty for infringement could be calculated. 667 F.2d 347, 362 (3d Cir.1981). Plaintiff filed a petition for certiorari with the U.S. Supreme Court, arguing that the failure to award damages after a finding of infringement in the production of non-bumper parts violated the mandate of 35 U.S.C. § 284.[1] The Supreme Court denied *cert., see* 456 U.S. 990, 102 S.Ct. 2270, 73 L.Ed.2d 1285 (1982). The Court did consider G.M.'s petition on the issue of prejudgment interest on the damages award for bumper-part infringement and affirmed the award. 461 U.S. 648, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983).

After this Court's rulings on postjudgment interest and interests on costs were affirmed by the Third Circuit, *see* 749 F.2d 1020 (1984), plaintiff filed a petition for certiorari on the postjudgment interest issue which also raised the issue of a damages award for non-bumper parts infringement. The basis for this petition was the alleged conflict between the Third Circuit's 1981 ruling in this case and decisions of the Federal Circuit rendered in 1983. *See* 53 U.S.L.W. 3839 (U.S. May 13, 1985) (No. 84–1795). The Supreme Court again denied the petition. *See* — U.S. —, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985).

Plaintiff's argument here appears similar to that made to the Supreme Court in the second *cert.* petition: namely, that a conflict exists between the 1981 Third Circuit decision refusing to grant a royalty award for non-bumper part infringement and later decisions of the Federal Circuit.[2] Plaintiff argues that this Court still retains jurisdiction over this case and this issue, despite the previous appeals, and that the Court has the power under the law of the case doctrine to recognize the supervening change of law and "correct" the Third Circuit's mistake.

---

**1.** This section states: "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, . . ."

**2.** Those cases are *Stickle v. Heublein, Inc.,* 716 F.2d 1550 (Fed.Cir.1983); *Hanson v. Alpine Valley Ski Area, Inc.,* 718 F.2d 1075 (Fed.Cir.1983);

and *Railroad Dynamics, Inc. v. A. Stucki Co.,* 727 F.2d 1506 (Fed.Cir.1984); *see also, Armco, Inc. v. Republic Steel Corp.,* 707 F.2d 886 (6th Cir.1983). Plaintiff interprets those cases as requiring a court always to award at least a reasonable royalty and prohibiting the denial of any award where the court finds infringement of a valid patent.

For the sake of argument, the Court will assume that the first two steps of plaintiff's reasoning are correct: the 1981 Third Circuit decision conflicts with later appellate decisions, and this Court retains jurisdiction to reopen the question of a royalty award for infringement in the production of non-bumper parts.[3] Nevertheless, the Court cannot grant plaintiff's request and act on the supervening change of law under the law of the case doctrine.

As a general matter, a court can reconsider a previous ruling when a supervening decision has changed the applicable rule of law. *See, e.g., Zichy v. City of Philadelphia,* 590 F.2d 503, 508 (3d Cir. 1979); *Al Haddad Bros. Enterprises, Inc. v. M/S Agapi,* 635 F.Supp. 205, 208 (D.Del. 1986). However, a trial court's power to reconsider a question is very limited after the appeals court has issued a mandate on the question and the matter is again before the trial court on remand or other subsequent proceedings. The proper course for plaintiff to follow if it believes that subsequent decisions have cast doubt on the correctness of the Third Circuit's 1981 ruling on non-bumper parts is to apply to the Third Circuit for a modification or recall of its mandate. *See Riley v. MEBA Pension Trust,* 586 F.2d 968, 972 (2d Cir.1978); *Elias v. Ford Motor Co.,* 734 F.2d 463, 465–66 (1st Cir.1984); 1B J. Moore, Moore's Federal Practice ¶ 404[10], at 171–72 (2d ed.

1984). This Court's acceptance of plaintiff's invitation to "reverse" the Third Circuit surely would invite a later reversal from that court.[4]

In addition to its "law of the case argument", Technograph claims that its motion on the non-bumper parts issue is proper under Fed.R.Civ.P. 60(b)(6). This provision allows a court to relieve a party from a final judgment or order for "any other reason justifying relief from the operation of the judgment." In *Seese v. Volkswagenwerk, A.G.,* 679 F.2d 336 (3d Cir.1982), the district court had denied a rule 60(b)(6) motion seeking relief from the Third Circuit mandate in the case because of a subsequent holding by the Fourth Circuit in direct opposition to the Third Circuit's original decision. The Third Circuit had denied rehearing after the Fourth Circuit decision, and the Supreme Court denied certiorari. The Third Circuit affirmed denial of the Rule 60(b)(6) motion: "The district court is without jurisdiction to alter the mandate of this Court on the basis of matters included or includable in defendant's prior appeal." *Id.* at 337.

Technograph seeks to distinguish *Seese* on the ground that the supervening Federal Circuit decisions, *see supra* note 2, were not "matters included or includable" in its prior appeal because they were rendered after the Third Circuit decision on

---

**3.** The Court has serious doubts about both of these assumptions. Regarding the alleged conflict between the Third Circuit and Federal Circuit decisions, this Court notes the Federal Circuit's recent statement on proof of damages: "One who fails to submit evidence in support of a position cannot be heard on appeal to complain that the trial court failed to find facts upholding that position." *Railroad Dynamics, Inc. v. A. Stucki Co.,* 727 F.2d 1506, 1519 (Fed. Cir.1984). In addition, plaintiff's reliance on G.M.'s supposed concession in its latest Supreme Court brief that *"Stickle* is now controlling" is simply beside the point. Plaintiff has taken this statement out of context.

Regarding the Court's continuing jurisdiction over this issue, it appears that a matter which has been decided by the district court, affirmed by the Court of Appeals, and denied certiorari by the Supreme Court generally is no longer *sub judice* in the district court. *See Seese v. Volks-*

*wagenwerk, A.G.,* 679 F.2d 336, 337 (3d Cir. 1982) (motion under Fed.R.Civ.P. 60(b)(6) ); *Eutectic Corp. v. Metco, Inc.,* 597 F.2d 32, 34 (2d Cir.1979) (same).

**4.** In *Morrow v. Dillard,* 580 F.2d 1284, 1297 (5th Cir.1978), the circuit court found that the district court properly reconsidered its grant of attorneys' fees on remand because of an intervening Supreme Court decision on the question. *Morrow* is distinguishable for two reasons. The original Fifth Circuit decision in *Morrow* did not directly address the attorneys' fee issue, whereas the Third Circuit did address directly the non-bumper parts royalty issue. Second, the intervening decision in *Morrow* came from the Supreme Court and directly conflicted with prior law. In contrast, here the intervening decisions came from a court coordinate to the Third Circuit and may not conflict with the Third Circuit decision, *see supra* note 3.

the non-bumper parts issue. The Court rejects this argument and finds *Seese* controlling. Although the 1983 Federal Circuit decisions could not have been brought up to the Third Circuit in 1981, they were included in one of plaintiff's prior appeals—the 1985 certiorari petition on which the Supreme Court denied review.[5] Plaintiff's invocation of Rule 60(b)(6) to seek review of the Third Circuit's "error" is improper. *See Eutectic Corp. v. Metco, Inc.,* 597 F.2d 32, 34 (2d Cir.1979) (rule 60(b)(6) motion cannot be used as substitute for appeal).

In addition, plaintiff admits that determination of the motion is a matter of the court's discretion. The Court will exercise that discretion and deny the motion. Plaintiff has had an abundance of opportunities to make its case for a royalty award on non-bumper parts—before the Special Master, this Court, the Third Circuit, the Supreme Court in 1982 and the Supreme Court in 1985—and the issue consistently has been determined against it. This Court will reconsider the matter only if directed to do so by a higher court.

## II. ADDITIONAL POSTJUDGMENT INTEREST

On August 22, 1983, this Court issued an opinion requiring G.M. to pay postjudgment interest on the damage award at the rate of sixteen percent per annum, 569 F.Supp. 1354. On August 30, 1983, G.M. paid into court $7,170,344.39, representing the full amount of postjudgment interest, at sixteen percent, to that date. On September 9, 1983, this Court entered an Order awarding postjudgment interest at sixteen percent against G.M. in the amount of $7,170,344.39, of which $2,688,879.15 was transferred immediately to Technograph. Docket No. 724.[6] The $2.6 million represented interest at six percent per annum, which G.M. admitted it owed; the remain-

ing $4,481,465.24 represented interest at ten percent per annum (the difference between six and sixteen percent), which G.M. disputed it owed to Technograph. The Court did not permit distribution of the $4.4 million at that time to prevent its possible dissipation by Technograph before final appellate determination of the appropriate rate of interest (six percent vs. sixteen percent). *See* Transcript of September 7, 1983, Hearing ("Transcript"), at 2, 12, 13, Docket No. 725.

On December 1, 1983, this Court ordered G.M. to pay $71,262.43 to Technograph as sixteen percent interest on the allowed costs, 577 F.Supp. 429. That amount also was deposited in Court but not released to plaintiff, *see* Docket No. 762, because G.M. claimed that no interest should be awarded on costs. The $4.4 million in postjudgment interest and $71,262.43 in interest on costs ("the funds") were deposited in an account in the name of the "Clerk of the Court of the U.S. District Court for the District of Delaware, C.A. No. 3058", to be invested in insured money market accounts or U.S. Treasury bills, at the direction of plaintiff. *See* Docket No. 717. The funds accrued interest at the market rate, which was less than sixteen percent.

The Third Circuit on November 28, 1984, affirmed this Court's award of sixteen percent postjudgment interest and award of interest on costs, 749 F.2d 1020, 1026–27. This Court approved a stipulation on November 15, 1985, allowing distribution of the $4.4 million and $71,262.43 (plus accrued interest) to Technograph.

Technograph now seeks to recover additional money from G.M. representing the difference between the market-rate interest earned on the funds and the sixteen percent rate of interest awarded by the Court in its September 9, 1983, and December 1, 1983, Orders. Technograph claims that those orders created liquidated amounts

---

5. *Standard Oil Co. v. United States,* 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976) (per curiam) is distinguishable for the same reason. *See Seese,* 679 F.2d at 337 n. 1.

6. Approximately $484,000 of the $2.6 million also was withheld by the Court because its ownership was disputed among the plaintiffs. Technograph later received this money with accrued interest. *See* Docket No. 773.

equivalent to a judgment, which went unpaid because it did not have complete access to the funds. Postjudgment interest at sixteen percent therefore accrued on the funds until Technograph finally received them November 15, 1985. In addition, Technograph argues that the November 15, 1985, payment must be applied first to accrued interest and then to principal under the "United States" rule, so that a portion of the principal (approximately $660,000) remains unpaid and still is accruing interest at sixteen percent.

Resolution of this matter turns on how G.M.'s payment of the funds into Court is construed. G.M. argues that its payments were made, in effect, under Fed.R.Civ.P. 67, so that its obligation to pay additional interest was discharged.[7] Plaintiff claims that G.M.'s payment was intended as a supersedeas bond under Fed.R.Civ.P. 62(d).[8] No motion under either rule was filed, and this Court's Orders of September 9, 1983, and December 16, 1983, do not specify why the funds were not paid directly to plaintiff. At the September 1983 hearing on the payment, G.M. withdrew its request that the judgment on postjudgment interest be marked satisfied in response to plaintiff's opposition. Transcript at 24.

■ G.M.'s payments into court served as actual payment of the postjudgment interest judgment, rather than as a supersedeas bond for a stay pending appeal. G.M.

paid the funds (representing all postjudgment interest and interest on costs owed) into court, and this Court accepted them, with the understanding that the payments extinguished G.M.'s obligation to pay postjudgment interest and interest on costs. This Court determined that G.M. was liable to the plaintiff, required that payment be made, and ordered that the funds be deposited in a bank account set up in the name of the Clerk of the Court. G.M. had no control over the funds once they were paid into court. Technograph controlled how the funds were invested, and the Court controlled distributions from the account. *See* Docket No. 717. G.M. owes no additional postjudgment interest or interest on costs. *Cf. International Telemeter Corp. v. Hamlin Int'l. Corp.,* 754 F.2d 1492, 1495 (9th Cir.1985) (postjudgment interest at statutory rate owed on funds in escrow account established by agreement of parties, over which debtor retained investment control); *Reliable Marine Boiler Repair, Inc. v. Mastan Co.,* 325 F.Supp. 58, 64 (S.D.N.Y.1971) (plaintiff not entitled to interest on funds in possession of court).[9]

For the foregoing reasons, the Court denies plaintiff's Motion for an Award of Interest and for a Reasonable Royalty Award on Non-Bumper Parts. An Order will enter in conformity with this Opinion.

---

**7.** Rule 67 provides:
> In an action in which any part of the relief sought is a judgment for a sum of money ..., a party, upon notice to every other party, and by leave of court, may deposit with the court all or any part of such sum or thing, whether or not that party claims all or any part of the sum or thing.... The fund shall be deposited in an interest-bearing account or invested in an interest-bearing instrument approved by the court.

**8.** That provision states: "When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay.... The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be."

**9.** The actions of G.M. also suggest that it did not intend the $4.4 million payment to serve as a supersedeas bond. It paid the money before it

filed an appeal and even before it was ordered to pay. Rule 62(d) requires that the bond be given "at or after" the time of filing the notice of appeal. G.M.'s counsel also stated that its payment provided plaintiffs with "much more protection than they would have by a supersedeas bond...." Transcript at 2, indicating that the payment was intended as something other than a supersedeas bond. This Court would not have required G.M. to provide a supersedeas bond because of the company's vast assets.

*United States v. Los Angeles Soap Co.,* 153 F.2d 320 (9th Cir.1946), on which plaintiff relies, is distinguishable. The monies paid into court there were designated by the court as "security" for the disputed tax liability, 153 F.2d at 321. This Court did not designate G.M.'s payments as security for anything, nor intend them to serve as such.